# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ACCRESA HEALTH LLC, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00536 |
| | § | Judge Mazzant/Magistrate Judge Craven |
| HINT HEALTH INC. | § | |
| | § | |
| Defendant/Counter-Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| TWIN OAKS SOFTWARE DEVELOPMENT | § | |
| INC. | § | |
| Counter-Defendant. | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-entitled and numbered civil action was heretofore referred to United States

Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The final pretrial conference is

scheduled before the undersigned on June 24, 2020.  (Dkt. #142). On March 19, 2020, the Magistrate

Judge issued a Report and Recommendation regarding proposed findings of fact and

recommendations on the following four motions: (1) Counter-Defendant Twin Oaks Software

Development, Inc.'s Motion for Summary Judgment as to Counter-Plaintiff Hint Health, Inc.'s

Claims (Dkt. #93); (2) Accresa Health LLC's Rule 12(b)(6) or 12(c) Motion to Dismiss Hint's

Defamation, Business Disparagement, Lanham Act, Tortious Interference, and Conspiracy Claims

(Dkt. #94); (3) Accresa Health LLC's Sealed Motion for Summary Judgment on Hint's Breach of

Contract Claim (Dkt. #95); and (4) Accresa Health LLC's Sealed Motion for Summary Judgment

on Hint's Defamation, Business Disparagement, Lanham Act, Tortious Interference, and Conspiracy

Claims (Dkt. #96).

Plaintiff/Counter-Defendant Accresa Health LLC ("Accresa") filed objections to the Report and Recommendation.  Counter-Defendant Twin Oaks Software Development, Inc. ("Twin Oaks") also filed objections to the Report and Recommendation. Defendant/Counter-Plaintiff Hint Health Inc. ("Hint") filed responses to the objections.

Hint also filed an objection to the Report and Recommendation to the extent the Magistrate Judge recommended Hint be precluded from recovering attorneys' fees from Accresa on Hint's breach of contract counterclaims. Accresa filed a response to Hint's objection.

The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

**Factual background**

As set forth in the parties' Joint Final Pre-Trial Order, this is an action for breach of contract, fraudulent inducement, fraud, misappropriation of trade secrets, violation of the Lanham Act, tortious interference, defamation, business disparagement, and civil conspiracy.  (Dkt. #127 at p. 3). The dispute at issue in this case focuses on three technology companies, Accresa, Hint, and Twin Oaks, that serve the direct primary care ("DPC") industry.

Accresa alleges Hint fraudulently induced Accresa to enter a preferred partnership agreement ("PPA"), breached the PPA, fraudulently induced Accresa to disclose confidential and proprietary information, and misappropriated Accresa's trade secrets. Accresa asserts the following causes of action against Hint: (1) breach of contract, (2) violation of the Texas Uniform Trade Secret Act (TUTSA), (3) violation of the Federal Trade Secrets Act (18 U.S.C. § 1836), (4) tortious interference with existing contract, (5) fraudulent inducement, (6) fraud, and (7) violation of Lanham Act (41

U.S.C. § 1125). For the breach of contract, fraudulent inducement, fraud, and misappropriation of trade secret claims, Accresa seeks appropriate injunctive relief, damages, and attorneys' fees.

Hint denies all of Accresa's allegations and claims Accresa breached the PPA, breached Hint's terms of service, defamed and disparaged Hint, and tortiously interfered with Hint's prospective business relations. In Hint's counterclaim, Hint alleges claims for defamation and business disparagement against Accresa. (Dkt. #34). Specifically, Hint alleges, among other things, Accresa repeated the false accusations that Hint's services were derived from trade secrets Hint stole from Accresa (Hint saw Accresa's "underwear"), and further made statements to the effect that Accresa would use its immense resources to wipe out Hint, and that Hint would not survive as a going concern. *Id.*, ¶ 24. Hint also alleges claims for violations of the Lanham Act and tortious interference with existing contract claims against Accresa and Twin Oaks. *Id.*, ¶¶ 33-39. It alleges a tortious interference with prospective relationships claim against Accresa. *Id.*, ¶¶ 40-45. Additionally, Hint alleges a conspiracy claim against Accresa and Twin Oaks. *Id.*, ¶ 71. Hint seeks damages and attorneys' fees.

Accresa denies Hint's allegations. In particular, Accresa denies it has breached the PPA, violated the Lanham Act, defamed or disparaged Hint, tortiously interfered with Hint's prospective business relationships, or engaged in a civil conspiracy with Twin Oaks. Accresa denies Hint's allegations that it acted with malice. Accresa denies it defamed, disparaged, violated the Lanham Act, tortiously interfered, or engaged in a civil conspiracy "because the allegedly tortious conduct underlying those causes of action is statements that are privileged under the judicial proceedings privilege and are statements of truth or unverifiable opinion." (Dkt. #127 at p. 4).  Accresa also denies that Hint is entitled to recover any damages, and otherwise disputes the nature and extent of

3

Hint's claim for damages. Accresa also denies that Hint is entitled to attorneys' fees.

Counter-Defendant Twin Oaks also denies Hint's allegations. Twin Oaks denies that Twin Oaks violated the Lanham Act, tortiously interfered with an existing contract, or engaged in a civil conspiracy. Twin Oaks asserts it did not willfully and intentionally interfere with Hint's contract with Accresa or proximately cause Hint damage. Twin Oaks further contends Hint did not suffer any damages as a result of any act of Twin Oaks. Twin Oaks also denies that Hint is entitled to recover any damages, and otherwise disputes the nature and extent of Hint's claim for damages. Twin Oaks also denies that Hint is entitled to attorneys' fees.

**Procedural background**

Five dispositive motions have recently been filed in this case, four of which the Magistrate Judge considered in her March 19, 2020 Report and Recommendation.[1]  On December 20, 2019, Accresa filed a Rule 12(b)(6) motion to dismiss or Rule 12(c) motion for judgment on the pleadings regarding Hint's defamation, business disparagement, Lanham Act, tortious interference,  and conspiracy claims ("Hint's tort and tort-derivative claims"). (Dkt. #94).  That same day, Accresa filed a motion for summary judgment on Hint's defamation, business disparagement,  false advertising under the Lanham Act, civil conspiracy, and tortious interference claims. (Dkt. #96). According to Accresa, "[o]nly as it relates to Hint's defamation claim, this Motion for Summary Judgment is in the alternative to Accresa's Motion to Dismiss Hint's Defamation Claim." *Id*. at p. 1, n. 1. Accresa also filed a separate motion for summary judgment regarding Hint's breach of contract counterclaims.  (Dkt. #95).

Twin Oaks filed its own motion for summary judgment regarding the three tort or tort-

---

[1] Hint's Motion for Summary Judgment (Dkt. #98) is still pending before the Magistrate Judge.

derivative claims Hint has asserted against it. First, Twin Oaks moves for summary judgment on Hint's cause of action for tortious inference with an existing contract claim, asserting Hint cannot demonstrate that Twin Oaks (1) willfully and intentionally interfered with the contract; (2) the interference proximately caused damage; and (3) that Hint suffered any actual damage or loss as a result of the actions of Twin Oaks. Second, Twin Oaks moves for summary judgment on Hint's Lanham Act claims for unfair competition and false advertising. According to Twin Oaks, Hint lacks prudential standing under the Lanham Act, and even if it does, Hint does not have any evidence that Twin Oaks' actions caused any cognizable injury to Hint. Third, Twin Oaks moves for summary judgment on Plaintiff's conspiracy claim because (1) Hint's tortious inference claim against Twin Oaks fails and (2) Accresa cannot conspire with Twin Oaks to interfere tortiously with its own contract. (Dkt. #93 at pp. 1-2).

## REPORT AND RECOMMENDATION

On March 19, 2020, the Magistrate Judge issued a 174-page Report and Recommendation ("Report"). (Dkt. #135). After setting forth the summary judgment evidence in detail, the Magistrate Judge recommended Accresa's motion to dismiss Hint's defamation counterclaim (and related counterclaims) be denied. The Magistrate Judge noted she would consider Hint's tort and tort-related claims in the context of Accresa's motion for summary judgment. Report at pp. 59-67.

The Magistrate Judge further recommended Accresa's motion for summary judgment regarding Hint's tort and tort-derivative claims be granted in part and denied in part. Specifically, the Magistrate Judge recommended Accresa's motion for summary judgment regarding Hint's tortious interference with existing contracts counterclaim be granted, but the remainder of the motion be denied. *Id*. at pp. 67-115.  Finding Hint has presented sufficient evidence to create a genuine issue

of material fact regarding its defamation, business disparagement, Lanham Act violations, and interference with prospective business relationships counterclaims, the Magistrate Judge recommended all but one of Hint's tort claims survive. Thus, the Magistrate Judge also found without merit Accresa's argument that Hint's civil conspiracy derivative tort claim fails because there is no underlying tort liability. *Id*. at p. 115.

Turning to Twin Oaks' motion for summary judgment, the Magistrate Judge recommended the motion be granted in part and denied in part. Specifically, the Magistrate Judge recommended Twin Oaks' motion for summary judgment regarding Hint's § 1125(a)(1)(A) Lanham Act claim be granted, but the remainder of the motion be denied. *Id.* at pp. 115-142.

Finally, the Magistrate Judge recommended Accresa's motion for summary judgment regarding Hint's breach of contract counterclaims be granted in part and denied in part. Specifically, the Magistrate Judge recommended Accresa's motion for summary judgment regarding Hint's counterclaim for attorneys' fees under § 38.001 of the Texas Civil Practice and Remedies Code be granted, but the remainder of the motion be denied. *Id.* at pp. 142-172.

## <u>OBJECTIONS</u>

**Accresa's objections**

Accresa filed three main objections to the Report and Recommendation. In its first main objection, Accresa objects to the Report's finding that Hint's counterclaim is sufficient as pled. In its second main objection, Accresa lodges numerous specific objections to the Magistrate Judge's findings and conclusions related to its motion for summary judgment on Hint's defamation, business disparagement, and conspiracy counterclaims. In its third main objection, Accresa objects to numerous findings and conclusions of the Magistrate Judge regarding its motion for summary

judgment on Hint's breach of contract counterclaim. Within this third objection, Accresa asserts the Report erroneously recommends that genuine issues of material fact exist as to whether Hint performed under the PPA. Accresa further asserts the Report erroneously recommends that genuine issues of material fact exist as to whether Accresa breached the PPA.

**Twin Oaks' objections**

Twin Oaks objects, in part, to the Report and asks the Court to reject, in part, the Magistrate Judge's findings and recommendations as to Twin Oaks' motion for summary judgment as to Hint's claims. Like Accresa, Twin Oaks raises three main objections to the Report. In its first main objection, Twin Oaks objects to the recommendation that Twin Oaks' motion for summary judgment as to Hint's tortious interference claim should be denied.

In its second main objection, Twin Oaks objects to the Report's recommendation that Twin Oaks' motion for summary judgment as to Hint's Lanham Act false advertising claim should be denied. According to Twin Oaks, there is no evidence to support a finding that Hint suffered any injury. Twin Oaks contends it is entitled to summary judgment on Hint's false advertising claim because Hint has not presented any evidence that any action by Twin Oaks caused any damages.

In its third main objection, Twin Oaks objects to the Report's recommendation that Twin Oaks' motion for summary judgment as to Hint's conspiracy claim should be denied. Asserting Hint has not created a genuine issue of material fact as to its tortious interference claim against Twin Oaks, Twin Oaks asserts Hint's conspiracy claim fails.

**Hint's objection**

Hint filed an objection to the part of the Report which recommends it be precluded from recovering attorneys' fees from Accresa on Hint's breach of contract counterclaims. According to

Hint, the Report does not acknowledge Hint raises the constitutional argument that Texas Civil Practice and Remedies Code § 38.001 violates the Equal Protection Clause.

Before turning to its *de novo* review, the Court notes the voluminous summary judgment evidence is set forth in detail in pages 11-59 of the Report and is not duplicated herein.  Nor does the Court duplicate herein the applicable law set forth in detail by the Magistrate Judge.  The Court will incorporate the pertinent facts and law in its discussion of the parties' objections.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citations omitted). The standard for deciding a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.2008). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(6), the court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  First, the court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.*

Second, the court considers the remaining "well-pleaded factual allegations." *Id.*  All allegations

must be accepted as true and viewed in the light most favorable to a plaintiff.  *In re Katrina Canal*

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  A plaintiff's complaint survives a defendant's

Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the

speculative level." *Id.* (quotations and citations omitted).

The ultimate inquiry must consider whether a plaintiff has pleaded "enough facts to state a

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "'[D]etailed factual

allegations'" are not required.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

However, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that

is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility

when the pleaded factual content allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The purpose of summary judgment is to isolate and dispose of factually unsupported claims

or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper

if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there

is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party

opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655

F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are

material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 Fed. Appx. 335, 338 (5th Cir. 2004). Rather, the court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

### *DE NOVO* REVIEW

**Accresa's objections**

#### *Discussion of first main objection*

In its first main objection, Accresa objects to the Report's finding that Hint's counterclaim

is sufficient as pleaded. According to Accresa, as set forth in its Rule 12(b)(6) or Rule 12(c) motion to dismiss, Hint's counterclaim fails to sufficiently allege who, when, where, and to whom the allegedly defamatory statements by Accresa were published. Therefore, Accresa asserts the Court should dismiss Hint's defamation and disparagement claims because Hint fails to satisfy the necessary elements.

In its response to Accresa's objections, Hint asserts "Accresa seeks to apply a heightened pleading standard that would require Hint to plead more than the elements of defamation: who published the statements, when and where the statements were published, and to whom the statements were published." (Dkt. #149 at p. 2).   Hint argues "Accresa's heightened pleading standard is at odds with the 'short and plain statement' standard in Rule 8." *Id.*

As noted by the Magistrate Judge, pleadings for a defamation claim must have sufficient detail to enable the defendant to respond, but they do not need to meet the heightened pleading standards found in Federal Rule of Civil Procedure 9. Report at p. 64. The defamation claim must also "state the time and place of the publication." *Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158, *5 (N.D. Tex.), *aff'd*, 232 F.3d 210 (5th Cir. 2000) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1309 at 698 (2d ed.1990)); *see also Wiggins v. District Cable Television Inc.*, 853 F.Supp. 484 (D.D.C. 1994) (federal pleading standards govern Rule 12(b)(6) motions, even in a diversity action concerning state substantive law); *Smith v. Shred-It USA*, 2010 WL 3733902, at *3 (N.D. Tex. 2010) (same).

The Magistrate Judge found Hint's counterclaim sufficiently alleges who published the allegedly defamatory statements and when. Report at p. 65. As between Accresa and Twin Oaks in their joint disparagement campaign, Hint alleged that after filing the lawsuit on July 31, 2018,

Accresa "repeated the false accusation that Hint's services were derived from trade secrets Hint stole from Accresa (Hint saw Accresa's 'underwear'), and further made statements to the effect that Accresa would use its immense resources to wipe out Hint, and that Hint would not survive as a going concern" to Hint's clients, referral sources, and prospective business relationships. Hint's Second Am. Countercl. (Dkt. #34) ¶¶ 24, 47.

Importantly, the Magistrate Judge noted that even if the defamation claim is considered insufficient as pleaded, she would be inclined to allow Hint the opportunity to amend to add greater detail as contained in Hint's summary judgment responses. Report at p. 66. The Magistrate Judge further noted, as set forth in Accresa's motion to dismiss, Accresa requested that should the Court be inclined not to dismiss Hint's tort or tort-related claims, the Court not permit Hint leave to replead, but adjudge Hint's claims on Accresa's summary judgment motion, filed in the alternative to its motion to dismiss. *Id.* (citing Dkt. # 94 at p. 11). In accordance with that request, the Magistrate Judge did not recommend Hint's tort or tort-related claims be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) or 12(c). Rather, she considered Hint's tort and tort-related claims, including the issues of whether the alleged statements are absolutely privileged and related to inactionable expressions of opinions, in the context of Accresa's motion for summary judgment. Report at pp. 66-67.

In its objections, Accresa argues "the Court should dismiss Hint's defamation and business disparagement claims because Hint [failed] to plead sufficient facts for the Court to determine whether, in the context in which the alleged statements were made, the statements give Hint a plausible right to relief for defamation and business disparagement." (Dkt. #144 at p. 5). In its response to Accresa's objections, Hint asserts its pleadings are sufficiently detailed to enable Accresa

to respond. (Dkt. #149 at p. 2). In the alternative, should the Court find Hint's pleadings insufficient, Hint reasserts its request for leave to amend its pleadings because its statement of additional facts in support of its responses to the motions for summary judgment demonstrates it can capably plead its claim in greater detail. *Id.* at p. 3 (citing *Coleman v. Carrington Mortg. Servs., L.L.C.*, No. 4:19-CV-0231-ALM-CAN, 2019 WL 7195392 (E.D. Tex. Dec. 3, 2019)).

The Court finds Hint has pleaded its defamation claim with sufficient particularity. While the allegations relating to the defamation claim do not specify when these alleged statements were made or to whom they were specifically made, the Court finds they are nevertheless sufficient to put Accresa on notice of the claim. *Encompass Office Sols., Inc. v. Ingenix, Inc*., 775 F. Supp. 2d 938, 958 (E.D. Tex. 2011). Rather than grant Hint's alternative request for leave to amend to more specifically plead its defamation counterclaim in line with the evidence submitted in the summary judgment briefing, the Court finds the Magistrate Judge properly considered the issues in the context of Accresa's summary judgment motion.

Along this same line, the Court recently rejected the proposed findings and recommendations of a magistrate judge, including a recommendation that a motion to dismiss a defamation claim be granted with leave to amend. In so doing, the Court noted the case had a pending motion for summary judgment that addressed all of the issues raised in the motion to dismiss. Therefore, the Court instructed the magistrate judge to proceed to address the motion for summary judgment. *McLemore v. Walmart Inc., L.L.C. Texas Stores*, No. 4:18-CV-689, 2020 WL 1190082, at *1 (E.D. Tex. Mar. 12, 2020).

Accresa's first main objection is overruled.

13

### *Discussion of second main objection*

In its second main objection, Accresa lodges numerous objections to the Magistrate Judge's findings and conclusions related to its motion for summary judgment on Hint's defamation, business disparagement, and conspiracy claims. As a threshold matter, Accresa objects to the Report's consideration of statements that were neither specifically pleaded by Hint, nor sufficiently alleged as the bases for Hint's tort claims during the 30(b)(6) deposition of Hint's corporate representative Mark Nolan. Additionally, Accresa raises the following specific objections: (1) the Report erroneously found a genuine fact issue as to whether the allegedly defamatory statements to Mr. Bessmer and Dr. Pinckney were made; (2) the Report improperly recommended the Court find the alleged defamatory statements are not privileged under the judicial proceedings privilege; (3) the Report does not properly consider evidence that the alleged statements by Accresa were true; (4) the Report erroneously recommends that fact issues exist as to whether the allegedly defamatory statements were verifiable statements of fact rather than an unverifiable opinion; (5) the Report errs in its recommendation that there is a genuine issue of fact as to whether Hint can establish *prima facie* claims for defamation/business disparagement; and (6) the Report errs in its conclusion that Hint states a *prima facie* claim for false advertising under the Lanham Act.

Accresa first argues, as it did before the Magistrate Judge, Hint is bound to the bases for its tort claims that its corporate representative Mark Nolan identified during his deposition. (Dkt. #96 at p. 10). According to Accresa, Nolan identified two "somewhat specific statements" on which Hint is basing its tort claims, along with "two non-specific, vague statements as bases for Hint's tort claims." *Id.* at I. Specifically, Accresa argues Hint's claims for defamation and business disparagement are limited to an email from Sheila Brown to James Nevins and a phone call between

14

Scott Borden and Nevins. As noted by the Magistrate Judge, Accresa identifies, but urges the Court

to exclude, statements allegedly made by William Short, Accresa's CEO and owner, to Dr. Pinckney

and to Dr. Bessmer as proper bases for Hint's tort claims. Report at p. 69 (citing Dkt. #96 at pp. 6-7).

In his deposition, Short described conversations with Bessmer and Pinckney in which they were

discussing Accresa's relationship with Hint and the litigation, wherein Short informed them that "our

claim included that --I believe the word I used is that we believe our IP was misappropriated and we

believe there was a breach of contract and we believe we were fraudulently induced into that

contract." Report at p. 70, n. 26 (citing Short Dep. at 309:13–20 & 319:18–23).

In its response to Accresa's objections, Hint asserts it is bound by its corporate

representative's deposition testimony "only to the extent that it cannot later *clearly contradict* the

deposition." (Dkt. #149 at p. 3) (emphasis in original). According to Hint, "Accresa acknowledges

that Nolan identified statements made to Mr. Bessmer, Dr. Pinckney, and Nevins, but ignores that

Nolan also referred to testimony and evidence regarding the very statements Accresa asks the Court

to disregard (which Accresa knew about **before** deposing Nolan)." *Id.* (citing Sept. 12, 2019

Holdsworth Dep. at 100:25–120:4 (emphasis added by Hint); also citing Nov. 18, 2019 Nolan Dep.

at 149:3–151:14; 154:19–25 ("I would point you back to other testimony, including Mr.

Holdsworth's, to get more detail" and "I would look back at the depositions of previous members

of the management team. I am pretty confident that the detail is located in there.")). Hint contends

Accresa was aware of this evidence because when Nolan pointed to Holdsworth's (and others')

deposition, Accresa's counsel instantly responded, "We got their depositions." (Dkt. #149 at p. 4)

(quoting Nolan Dep. at 151:14).

Contrary to Accresa's assertions, Hint's corporate representative did identify the defamatory

15

statements made to Pinckney and Bessmer in his deposition. Nolan Dep. at 137:25–138:5 ("representatives of Accresa made defamatory statements or false statements . . . at least in two other situations; one being to Dr. James Pinckney, another being to Ryne Bessmer."), 138:6–14 (stating his general recollection was that the statements were that Hint stole Accresa's trade secrets, was not operating in good faith, and is "going to go under."). As noted by the Magistrate Judge, Nolan specifically listed Nevins, Pinckney, and Bessmer, and he expected "there's probably more in the market as well." Report at p. 71 (citing Nolan Dep. at 139:19-23). Although Nolan could not remember the details, he understood the "gist of what was communicated to Dr. Pinckney and Mr. Bessmer." Report at p. 71 (citing Nolan Dep. 152:16-19). After taking a fifteen-minute break and having the opportunity to speak with counsel (but not having the chance to speak to the management team), Nolan could not identify who from Accresa published the alleged statements to Pinckney or Bessmer or the exact wording, but said that the "inference" or "gist of the communication" was that "Hint stole trade secrets and claims that Hint was going under" and that Hint acted in bad faith. Report at p. 71 (citing Nolan Dep. at 152:20–154:1).

The Court agrees with the Magistrate Judge's finding that Hint's corporate representative sufficiently identified the alleged statements to Bessmer and Pinckney as underlying bases for Hint's tort claims in this lawsuit.

In its objections, Accresa claims "Hint has produced scant evidence that the allegedly defamatory statements to Mr. Bessmer and Dr. Pinckney were even made." (Dkt. #144 at p. 6). Accresa claims Short's statements to Bessmer and Pinckney were not stipulated facts. *Id*. at p. 7. According to Hint's response, Accresa conceded that Short published the alleged statements to Nextera, Strada (Bessmer), and Dr. Pinckney when it did not object to the additional material facts

16

Hint provided in support of its response to Accresa's motion for summary judgment on Hint's tort claims (Dkt. #105 at p. 2).

The Magistrate Judge correctly noted Hint may rely on Accresa's deposition testimony or documents for factual support of its claims, including Short's testimony as evidence that he made the statements. Report at pp. 72–73. Hint asserts in its response to Accresa's objections that Accresa acknowledged as such in its underlying reply. (Dkt. #149 at p. 5 (citing Dkt. #110 at p. 2; also citing FED. R. EVID. 801(d)(1), (2) (declarant witness's prior statement, admission-by-party-opponent, and statement by co-conspirator); also citing *Leon v. Sears, Roebuck & Co.*, No. 3:11-CV-0874-D, 2012 WL 3702950, at *3 n.6 (N.D. Tex. Aug. 28, 2012) ("Leon contends that Sears is bound by Fed. R. Civ. P. 30(b)(6) to solely using [its corporate representative] deposition testimony as summary judgment evidence. But Rule 30(b)(6) does not preclude Sears from citing to Leon's own testimony.")).

In its objections, Accresa asserts Hint "ambushed" it by citing Short's statements as bases for Hint's defamation and business disparagement claims.  (Dkt. #110 at pp. 2–3). According to Hint's response to the objections, a party is not ambushed when it is aware of underlying legal theories or evidence through discovery. *See Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*, No. CV H15-100, 2016 WL 6956773, at *4–5 (S.D. Tex. Nov. 29, 2016). Hint asserts the court in *Musket Corporation* rejected Accresa's argument, noting "[t]he fact that [defendant] did not immediately recall exact figures during his deposition is not grounds to exclude information that [plaintiff] clearly received in sufficient time during discovery." *Id.* at *5. Hint contends Accresa already had the evidence during discovery that it now seeks to exclude, and Accresa showed it understood the relevance of this evidence by beginning its summary judgment briefing with reference

17

to Short's alleged defamatory statements.  (Dkt. #149 at p. 4 (citing Dkt. #96 at pp. 6–7 (citing Short Dep. at 309:13–20, 319:18–23))).  As urged by Hint, Accresa already had and knew the content of Short's deposition, and it supplements Nolan's deposition by confirming Short's alleged statements to Nextera (Flanagan), Bessmer (Strada), and Dr. Pinckney. (Dkt. #149 at p. 5 (citing Short Dep. at 309:13–20, 319:18–23, 321:1–232:5).

In addition to Nolan's testimony, the Magistrate Judge noted Hint also relies on the deposition testimony of Hint's CEO Holdsworth regarding Short's alleged defamatory statements that Accresa would run Hint into the ground and that Hint would cease to exist, among other things. Report at p. 71 (citing Holdsworth Dep. at 100:25-120:4). In its objections, Accresa contends Holdsworth's deposition testimony about Short's alleged defamatory statements is inadmissible hearsay.  (Dkt. #144 at p. 7). According to Hint, a judge within the Eastern District of Texas has already held this type of testimony admissible under nearly identical circumstances. (Dkt. #149 at p. 6 (citing *Rail Scale, Inc. v. Balanced Railscale Certification, L.L.C.*, No. 2:15-CV-02117-RSP, 2017 WL 319078, at \*3 (E.D. Tex. Jan. 23, 2017)). In *Rail Scale*, the defendant alleged business disparagement and tortious interference counterclaims and submitted a declaration of one of the defendant's owners that identified clients to whom the plaintiff allegedly made statements warning the clients against doing business with the defendant. *Id.* at \*4. Although noting the declaration contained hearsay, the court noted the employee of the potential customer identified in the declaration could testify at trial as to what the plaintiff told him about the consequences of doing business with the defendant, "and such testimony would not likely be hearsay." *Id.* at \*3 (FED. R. EVID. 801(d)(2)). Again noting that although the content of the declaration was inadmissible hearsay in its current form, the court stated "the potential customer's employee could testify about RSI's

18

statement, and such testimony would not be hearsay." *Id.* at \*4. Just as in *Rail Scale*, Holdsworth's testimony identifies specific clients including Pinckney and Bessmer that may be called to testify about statements that would not be hearsay. *See also Nat. Dynamics, L.L.C. v. Calm Nat. Ltd.*, No. A-14-CV-1060-LY-ML, 2017 WL 11048957, at \*6 (W.D. Tex. May 19, 2017) (holding testimony "regarding what [Plaintiff's] customer representatives told customers they spoke with" was not hearsay when offered by Defendants "for the fact that the employees made the statements at all."), *report and recommendation adopted in part, rejected in part*, 2017 WL 11049420 (W.D. Tex. June 9, 2017).

The Court finds Hint has presented sufficient evidence to establish a genuine issue of fact that the statements were made.

Accresa next contends the Report erred in finding the defamatory statements are not judicially privileged. (Dkt. #144 at p. 8). In the underlying briefing, Accresa argued Borden's, Brown's, and Short's alleged statements all explain or summarize the allegations found in Accresa's complaint, which is publicly-filed and available on the internet for anyone to see.  (Dkt. #110 at p. 5). According to Accresa, there is no evidence that Borden's, Brown's, or Short's statements were published apart from explaining the complaint, and there is no evidence "they left out or added facts that misconstrued, to a reasonable person, what the Complaint alleged." *Id.*

Courts apply the judicial privilege "'when the essence of a claim is damages that flow from communications made in the course of a judicial proceeding' and the claimant seeks reputational damages." *Schutt a/n/f for A.S. v. Garland Indep. Sch. Dist.*, No. 3:17-CV-1708-B, 2019 WL 3006768, at \*6 (N.D. Tex. July 9, 2019) (quoting *Deuell v. Texas Right to Life Committee, Inc.*, 508 S.W.3d 679, 690 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Laub v. Pesikoff*, 979

19

S.W.2d 686, 691 (Tex. App.—Houston [1st Dist.] 1998, writ denied))). This privilege extends to any statements made by the judges, jurors, counsel, parties, or witnesses and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any pleadings or other papers in the case. *Deuell*, 508 S.W.3d at 689 (citation omitted). Judicial privilege also extends to statements made in contemplation of and preliminary to judicial proceedings. *Id.* (citations omitted).

To trigger the privilege, "there must be a relationship between the correspondence and the proposed or existing judicial proceeding, which decision is made by considering the entire communication in context, resolving all doubts in favor of its relevancy." *Id.* at 690 (quoting *Crain v. Smith*, 22 S.W.3d 58, 62 (Tex. App.–Corpus Christi 2000, no pet.); also citing *Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 302–03 (Tex. App.–Corpus Christi 2002, pet. denied) (no requirement that actual lawsuit be filed in order for judicial privilege to apply; only that statements are related to a contemplated judicial proceeding)). The Texas Supreme Court has held the privilege should apply in cases in which a party seeks damages that flow from alleged reputational harm, regardless of the type of claim alleged. *Deuell*, 508 S.W.3d at 690 (citing *Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994)). But as the Fifth Circuit has recognized, "the privilege cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings." *Schutt a/n/f for A.S.*, 2019 WL 3006768, at *6 (quoting *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 402 (5th Cir. 2017) (alterations incorporated in *Schutt*) (quoting *De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 118, 122 (Tex. Civ. App.—Galveston 1927, no writ))). When deciding whether a

communication is related to a proposed or existing judicial proceeding, the "court must consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to an existing or proposed judicial proceeding." Report at p. 77 (quoting *Charalambopoulos v Grammar*, No. 3:14-CV-2424-D, 2017 WL 606639, at \*11 (N.D. Tex. Feb. 15, 2017) (quoting *Russell v. Clark*, 620 S.W.2d 865, 870 (Tex. App.—Dallas, writ ref'd n.r.e.))).

In its objections, Accresa argues its alleged defamatory statements were related to this judicial proceeding, any doubt should be resolved in favor of the communications' relation to the proceeding, and the alleged defamatory statements "had the practical effect of providing the pleadings to Nevins, or were no more harmful than [sic] if Nevins had read the Complaint himself, which was publicly filed and available for all to view on the internet." (Dkt. #144 at pp. 8–9). Accresa argues similarly regarding Short's alleged defamatory statements to Mr. Bessmer and Dr. Pinckney. *Id.* at p. 9, n.2.

The Court finds Accresa's arguments without merit. Similar to the Magistrate Judge, the Court finds instructive two Fifth Circuit cases, *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391 (5th Cir. 2017)[2] and *Burzynski v. Aetna Life Insurance Co.*, 967 F.2d 1063 (5th Cir. 1992), *modified on rehearing* 989 F.2d 733 (5th Cir. 1993) upon which it relies. In *Burzynski*, the Fifth Circuit "examined the reach of Texas's protection of communications made in aid of discovery and, in doing so, drew on Texas's judicial proceedings privilege caselaw to determine whether the communications at issue had some relation to the proceeding." *BancPass*, 863 F.3d at 405 (citing

---

[2]   The Fifth Circuit in *BancPass*, in making an *Erie* guess as to whether communications made prior to a contemplated judicial proceeding to third parties TxDOT, Google, and Apple should be protected by the judicial proceedings privilege, concluded that Texas caselaw discussing the privilege counseled against its application in that case. *BancPass*, 863 F.3d at 401-02.

Case 4:18-cv-00536-ALM-CMC   Document 151   Filed 05/22/20   Page 22 of 66 PageID #:  9925

*Burzynski*, 967 F.2d at 1068) (internal quotation marks and alteration omitted). Although the statements to third-party recipients in *BancPass* were about contemplated litigation, the communications in *Burzynski* were sent by the defendant to third-party companies during a related lawsuit, attempting to dissuade them from doing business with the plaintiff. *Burzynski*, 967 F.2d at 1065–67. "Although the letter in *Burzynski* described the specific litigation between the parties and was styled as an 'informal discovery request,' the communications were predominately composed of pejorative statements and warnings about fraudulent claims allegedly made by the plaintiff." *BancPass*, 863 F.3d at 405 (citing *Burzynski*, 967 F.2d at 1065–66). The Fifth Circuit concluded in *Burzynski* that the communications were not protected under Texas law. *BancPass*, 863 F.3d at 405 (citing *Burzynski*, 967 F.2d at 1069). As noted by the Magistrate Judge, in denying the privilege in *Burzynski*, the Fifth Circuit stated the letters were sent to parties who could not "be reasonably believed to have cognizable legal interest in the litigation" and noted that the recipient companies' relationship to the litigation was "hypothetical at best." *BancPass*, 863 F.3d at 405 (citing *Burzynski*, 967 F.2d at 1068-69).

These cases indicate the circumstances of the third-party recipient – and that party's relationship to the litigation – is relevant to the analysis. *See* Report at p. 82. As noted by the Magistrate Judge, this case does not involve statements made by attorneys to members of the news media but rather involves oral and written statements allegedly made by agents of Accresa to potential Hint clients, prospective clients, and referral sources. *Id.* at pp. 81-82. Here, in addition to the statements admittedly made by Short to Ryne Bessmer and Dr. James Pinckney,[3] Hint has

---

[3]In his deposition, Short described conversations with Bessmer and Pinckney in which they were discussing Accresa's relationship with Hint and the litigation, wherein Short informed them that "our claim included that --I believe the word I used is that we believe our IP was misappropriated and we believe there was a breach of contract and we

produced evidence regarding oral and written statements made by Accresa agents to Nevins. In September 2018, Scott Borden, former VP of Sales at Ameriflex (a partner of Accresa), connected an employee benefits broker James Nevins with Accresa and coordinated a demo of Accresa. Nevins Dep. at 11:10–13:16, 22:22-25, 29:1-23, 40:14–41:21. According to Nevins, after an "awful" and "very awkward" pitch of Accresa to a group of DPC providers, one of which knew about Hint and the present litigation, Borden explained to Nevins what "the entire lawsuit was about," which "was Accresa was suing Hint because they believed that Hint had taken—copied what they were doing." *Id.* at 10:14-11:9, 20:19–23:22. Although he could not recall hearing the exact words that Hint had taken Accresa's intellectual property or "trade secrets," Nevins definitely recalled hearing that Hint had copied what Accresa was doing and that "Accresa was first and Hint was. . . stealing. . . Accresa's ideas." *Id*. at 20:19–21:14.

After the pitch, Sheila Brown, a customer representative for Accresa who helped coordinate the Accresa demo for Nevins, sent Nevins an email dated September 4, 2018. *Id*. at 54:17-18. In an email the same day, Nevins informed Brown the "one negative feedback they gave was the cost per transaction," and he further mentioned there "was a competing platform that was half the cost to them." Brown email at p. 3(attached as Exhibit 4 to Accresa's breach of contract summary judgment motion). Brown then asked who was the platform offering cheaper pricing, and Nevins responded he thought it was Hint. Richter Dep. at 54:19-55:8.

Brown then forwarded the email to the president of Accresa Anne Richter, writing at the top: "Anne, I wanted to send this to you from James Nevins. I think Hint is now offering the platform at half price." *Id.* at 55:9-15.

---

believe we were fraudulently induced into that contract." Short Dep. at 309:13–20; *see also id.* at 319:18–23.

In response, Richter stated as follows:

> I'd hate to lose an opportunity to at least present to the consultant/docs what our Accrea platform can do that Hint's (if indeed that's the competing platform - I'm sure it is) cannot. It would be a shame if they're considering the two as apples to apples solutions, since there is a ton of functionality that we would be able to offer that Hint does not currently have in production.

*Id.* at 55:19-56:5. During her deposition, Richter stated she thought she was referring to the affiliate functionality. *Id.* at 56:6-10. However, she confirmed she first learned that Hint was developing affiliate management functionality at the DPC Summit in the summer of 2018 and that it was her belief that Hint copied that functionality from Accrea in some way. *Id.* at 56:11-19.

As pointed out by the Magistrate Judge, in Brown's next email to Nevins, Brown stated Hint did not have that production. Report at p. 91 (citing Richter Dep. at 56:20-23). Specifically, Brown stated the following in an email to Nevins:

> We (Accrea) would really like the opportunity to at least present the consultant/doctor platform of Accrea to the doctors. Accrea is not a equal platform to Hint. We have a ton of functionality that Hint does not have. We are also flexible in negotiating some of our fees. We are willing to match what Hint is offering, for the chance to showcase that our platform is better.
>
> Since it might not be Hint, I think it is worth conveying to the doctors that Accrea is in open litigation with Hint. Some of the functionality that Hint is selling the doctors is a) not even in production yet (and Accrea's is), and b) the subject of an IP infringement lawsuit that Accrea is pursuing to the fullest extent, in order to prohibit that IP from ever being released by Hint into market. Besides price, what else is swaying the doctors to Hint?

Hint Dep. Ex. 205.

There is more. Hint also provided evidence of internal communications within Accrea management indicating Accrea was communicating about Hint. *See* Hint Dep. Ex. 171 (September 11, 2018 text string between Short and Richter wherein Short mentioned edits to the Hint settlement

agreements, texted negatively about Holdsworth, and then stated as follows: "As part of our Marketing Communication [sic] Campaign. . . . if we go down the rabbit hole . . . I want to buy ads . . . spray our story . . . put [Hint] on their heels to have to address this issue . . . this battle must have several fronts . . . war rather. . . when someone googles Hint DPC DC. . . I want the lawsuit coming up first things . . . all public knowledge"; Richter later responded "I can catch you up later but there may be alternatives. or not. I just could see some value if we need to proceed in the all out war of public opinion vs hint"); *see also* Hint Dep. Ex. 172 (September 12, 2018 text from Short "if Hint does go for our settlement offer and we serve them. . . . I want to blast the world . . . someone searches Direct Care and Hint . . . BOOM"). In an April 2, 2019 chat transcript between Short and Richter, Short mentioned a DPC provider named Dr. Conard was presenting at the Hint Summit. Richter then suggested "people need to pick a side" between Accresa and Hint, "tell him to pick the winner." Richter Dep. at 222:22–223:23. In a July 3, 2019, Richter wrote "I was under the impression that Salta (at least its core network) was DPC only.  Also, given our outreach to Dr. Blanchard re: Hint, I would rather not ask him any other favors right now." *Id.* at 260:15–21.

Viewing all of the evidence in the light most favorable to Hint, Accresa has not established it is entitled to assert the judicial proceedings privilege as a full defense to Hint's defamation and business disparagement counterclaims.  As held by the Magistrate Judge, the audience for Accresa's alleged defamatory statements had no interest in the litigation and therefore judicial privilege does not apply. Report at p. 85 (holding the defamatory communications "were sent to parties who could not 'be reasonably believed to have cognizable legal interest in the litigation' and whose relationship to the litigation were 'hypothetical at best.'" (quoting *Burzynski*, 967 F.2d at 1068–69)).

In its next two sub-arguments in its second main objection, Accresa asserts (1) the Report

did not properly consider evidence that Accresa's defamatory statements were true (Dkt. #144 at pp. 10-11); and (2) the Report erred in finding there is a genuine issue as to whether the alleged statements by Accresa are verifiable statements of fact rather than unverifiable opinions (Dkt. #144 at pp. 11-12). The Magistrate Judge noted, with regard to the defamation claim, Accresa will bear the burden at trial of establishing that the statements were substantially true. Report at p. 89 (citing *Levine v. Steve Scharn Custom Homes, Inc*., 448 S.W.3d 637, 652 (Tex. App. – Houston [1st Dist.] 2014) (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995))). As further explained by the Magistrate Judge, Hint bears the burden of proving falsity for its business disparagement claim. Report at p. 89. According to the Magistrate Judge, regardless of who bears the burden, there is a genuine issue of material fact regarding truth or falsity of the disputed statements. *Id.*

In its objections, Accresa claims Borden simply told Nevins what the lawsuit was about, which was true or substantially true. (Dkt. #144 at p. 10). In a footnote, Accresa argues Short's alleged defamatory statements "explaining the allegations of the lawsuit are also substantially true." *Id*. at p. 11 n.3. However, Accresa offers no further argument in support.[4] Regarding whether the allegedly defamatory statements were verifiable statements of fact, Accresa argues, as it did before the Magistrate Judge, Short's alleged statements to Dr. Pinckney and Mr. Bessmer that Accresa *believed* Accresa's IP was misappropriated by Hint is not verifiable as false because it is a statement

---

[4] In its underlying briefing, Accresa argued Short's statements were protected opinions, "Accresa believes" that Hint stole its trade secrets, or substantially true statements that "the claim says. . . ." (Dkt. #110 at pp. 8-9) (citing Short Dep. at 309:11-20; 319:14-320:21). Specifically, Accresa asserted the statements are substantially true in that Short merely told Bessmer and Pinckney what Accresa believed and alleged in its lawsuit, not that Hint stole Accresa's trade secrets. Similarly, Accresa argued Brown's and Borden's statements to Nevins regarding the lawsuit show that, like Short's statements, they are unverifiable opinions about what Accresa believed or substantially true statements about what Accresa alleged in its complaint. *Id.* at p. 10.

about Accresa's belief. (Dkt. #144 at p. 12) (emphasis in original).

The Magistrate Judge pointed out in her discussion on this issue that on September 5, 2018, Accresa met with the management team of Strada Healthcare in Omaha. Report at p. 89 (citing Hint Dep. Ex. 170). Short and Richter attended for Accresa, Lisa Fisher and Dr. Bessmer attended for Strada. *Id.* (citing Short Dep. at 307:18–313:6). At the meeting, they discussed Accresa and its product offering, and Strada "also asked about the relationship with Hint." *Id.* (citing Short Dep. at 308:18-23). Short told Fisher and Bessmer that Accresa believed "our IP was misappropriated [by Hint]. . . ." *Id.* (citing Short Dep. at 308:24-310:6).

The Magistrate Judge found any statements by Accresa agents that Hint misappropriated Accresa's trade secrets are verifiable. As the Report notes, whether it is true that Hint misappropriated Accresa's intellectual property is a fact issue the jury will decide if Accresa's trade secret misappropriation claims survive summary judgment. Report at p. 90. The Magistrate Judge further noted in her discussion that Holdsworth testified he is aware of the allegedly defamatory comments made to Nextera, Strada, and Dr. Pinckney with Diamond Physicians. Report at p. 89 (citing Holdsworth Dep. at 100:25–118:13). According to Holdsworth, he had a conversation with Dr. Pinckney who told Holdsworth Accresa had been claiming Hint stole Accresa's trade secrets and Accresa would "run [Hint] into the ground," "and we would cease to exist." Report at pp. 89-90 (citing Holdsworth Dep. 102:1–6). The Magistrate Judge agreed with Hint that Short's alleged statements that Accresa would run Hint into the ground and that Hint would cease to exist are verifiable statements of fact.

The Magistrate Judge then addressed the alleged statements to Nevins following his unsuccessful pitch to DPC providers regarding Accresa. Report at pp. 90-92. The Magistrate Judge

concluded as follows:

> Hint asserts Accresa's statement in the email that '[s]ome of the functionality that Hint is selling the doctors is . . . not even in production yet (and Accresa's is),' is a statement of fact that is 'demonstrably false.' Docket Entry # 105 at p. 10. The Court agrees. Hint has produced evidence indicating it did have affiliate features in production in January 2017. *See* Richter Dep. 53:17–56:23; Melcher Dep. 209:1–21 (stating that an earlier version of Hint's platform had automated enrollment and flow of funds to affiliates but further clarifying that the entire process was not automated but significant portions of that process were). Despite representing to Nevins that Accresa had 'a ton of functionality that Hint does not have,' Accresa witnesses stated during their depositions they did not actually know what functionality Hint had. Morales Dep. 126:5–10 ('I don't know the specifics of Hint functionality. . . .'); Short Dep. 101:21–102:1 (stating he could not say for certain whether Hint has some employer capabilities to help providers service employers); Short Corp. Rep. Dep. 36:22–25 ('Q. Okay. But Accresa doesn't know specifically what Hint's capabilities are with – regarding automated flow of funds, correct? A. Today we don't know.').

> The complained-about statements and the September 4, 2018 email, either standing alone or in connection with other evidence of record, conveyed that Accresa had a ton of functionality Hint did not have in production and that Hint had stolen something from Accresa. The context of the remaining statements indicate they were not simply opinions masquerading as fact. Accordingly, the Court finds without merit Accresa's arguments that the statements are not verifiable and are protected opinions.

Report at p. 92.

In its objections, Accresa asserts the "Report considers the truth of Brown's statement to Nevins about the functionalities that Accresa had compared to Hint in July 2018," even though Hint did not specifically allege that as part of its defamation claim. (Dkt. #144 at pp. 10-11). However, there is no question Hint's corporate representative testified regarding Brown's email to Nevins, thus giving Accresa notice of the claim. The Court does not find the Magistrate Judge erred in considering the email.

Accresa further alleges Brown's email stating that "[s]ome of the functionality that Hint is selling the doctors is . . . not even in production yet (and Accresa's is)," is substantially true because

28

"Hint announced its Hint Network in June 2018 and started production in September 2018 at the earliest." (Dkt. #144 at p. 11). In Hint's response to the objections, Hint first asserts Accresa believed it was referring to affiliate functionality not only the Hint Network. (Dkt. #149 at p. 10). According to Hint, the Magistrate Judge set forth the evidence produced by Hint indicating it did have affiliate features in production in January 2017. *Id.* (citing Report at pp. 91–92). Hint further asserts "[e]ven if Accresa now characterizes its defamatory statement as referring to only the Hint Network, the Brown email was not sent in July 2018 as Accresa misstates[. Rather] it was sent in September 2018, the month Accresa admits the Hint Network was capable of being in production." (Dkt. #149 at p. 10) (citing Dkt. #144 at p. 11 ("Hint announced its Hint Network in June 2018 and ***started production in September 2018*** at the earliest. . . . some of the functionality that Hint . . . was selling to doctors in ***July 2018 at the time the statement was made*** was not in production yet.") (emphasis added by Hint)). Hint argues "Accresa made the statements anyway, without taking any steps to verify—and therefore with a reckless disregard for—their truth." (Dkt. #149 at p. 10).

The Court finds Accresa's arguments without merit. Regarding the issue of whether the alleged statements are verifiable,  Hint asserts the Supreme Court has held a statement expressed as a belief can be actionable if it expressly or impliedly asserts objectively verifiable facts. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). According to Hint, by saying Accresa believes that Hint stole its intellectual property, Accresa asserts it has knowledge of facts that can (and will) be verified as true or not. The Court agrees. "As explained by the Supreme Court, a statement such as 'I think Jones lied' can be false" if Jones in fact did not lie or the speaker did not truly believe that Jones lied. *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 13 (D.D.C. 2019) (quoting *Benic v. Reuters America, Inc*., 357 F. Supp.2d 216, 223 (D.D.C. 2004) (quoting

29

*Milkovich*, 497 U.S. 1, 20 n.7)). Consistent with Supreme Court precedent and Texas law, the Report properly concludes Accresa's statements are objectively verifiable and therefore properly the subject of defamation and business disparagement claims.

Regarding the issue of falsity, the Court agrees with the Magistrate Judge that the evidence set forth in detail in the Report, when viewed in the light most favorable to Hint, is sufficient to establish falsity. The Report properly concludes that genuine issues of fact exist as to the falsity of Accresa's alleged defamatory statements.

Accresa next objects to the Report's conclusions that genuine issues of material fact exist as to whether Accresa's alleged defamatory statements were published, made with the requisite negligence or malice, and harmed Hint. (Dkt. # 144 at pp. 12–16). Focusing on Nevins' deposition testimony that he did not read the entirety of the email from Brown, Accresa argues, as it did before the Magistrate Judge, the Report erred in concluding the allegedly defamatory statements were even published. *Id.* at pp. 12-13. According to Hint's response, as the Report points out, Brown's email and Borden's statements were published to Nevins, who was capable of understanding their defamatory meaning, and who understood Brown's email discussing Hint's capabilities and got the "gist" of Borden's communications that "Accresa was first and Hint was . . . stealing . . . Accresa's ideas." (Dkt. #149 at pp. 12-13) (citing Report at pp. 90, 96-97).

The Magistrate Judge concluded as follows:

Here, the summary judgment evidence shows that Accresa agents disseminated some incorrect and misleading information about Hint. The statements were made not just orally but also via email to Nevins. *See Loco Brands*, 2020 WL 809284, at *8 (citing *Richard Rosen, Inc. v. Mendivil*, 225 S.W.3d 181, 196 (Tex. App.—El Paso 2005) (holding that false statements to a third party made by a company agent in his company capacity supported a jury finding of defamation); also citing *Adams v. Starside Custom Builders, L.L.C.*, 2018WL6427640 at *13 (Tex. App.—Dallas

30

December 7, 2018) (upholding a finding of defamation based on defendant's email to third parties)).

Even though Nevins stated in his deposition he did not specifically remember reading some things about Hint's capabilities, he acknowledged he had skimmed over and 'read this e-mail from Sheila, and it obviously says some things about [Hint's capabilities].' Viewed in the light most favorable to Hint, the Court concludes there is evidence that Accresa, through Borden and Brown, published the statements to Nevins who was capable of understanding its defamatory import and who did in fact understand the statements in that way. The Court finds Hint has offered sufficient evidence that Accresa published false statements of fact to third parties.

Additionally, the evidence, when viewed in the light most favorable to Hint, also creates a fact issue on Accresa's state of mind at the time of the statements. The evidence, especially when viewed in the context of Accresa's internal communications, creates a fact question as to whether the statements were made with at least negligence or with the requisite malice or reckless disregard.

Report at pp. 96-97.

The Court agrees with the Magistrate Judge that Hint has offered sufficient evidence that Accresa published allegedly false statements of verifiable fact to third parties.

Accresa next contends Hint cannot show with "significant probative evidence" that Borden or Brown acted negligently or with malice. (Dkt. #144 at p. 13) (quoting *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982)). According to Accresa, the Report fails to identify the facts in the record or the specific internal communications which create a fact issue as to Accresa's negligence or reckless disregard in publishing the allegedly defamatory statements. (Dkt. #144 at pp. 13-14). In response, Hint asserts Accresa's internal communications are "strong circumstantial evidence of Accresa's malice." (Dkt. #149 at p. 13). Hint further asserts Accresa's position that Brown's email was not sent with reckless disregard is premised on the incorrect statement that the email was sent in July 2018 when it was actually sent in September 2018, a month when Accresa admits the Hint Network could have been in production. *Id.* at pp. 14-15.

31

To prevail on its defamation claim, Hint must show Accresa was at least negligent. Report at p. 94 (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). Business disparagement's malice requirement "means that the statement was made with knowledge of its falsity or with reckless disregard for its truth." *Id.* (quoting *Loco Brands, L.L.C. v. Butler Am., L.L.C.*, No. 6:18-CV-69-JDK-KNM, 2020 WL 809284, at *8 (E.D. Tex. Jan. 30, 2020), *report and recommendation adopted*, No. 6:18-CV-69-JDK-KNM, 2020 WL805570 (E.D. Tex. Feb. 18, 2020) (quoting *MacFarland v. Le-Vel Brands L.L.C.*, 2017 WL 1089684, at *12 (Tex. App.—Dallas March 23, 2017) (citing *In re Lipsky*, 460 S.W.3d 593 (Tex. 2015); also citing *Campbell v. Clark*, 471 S.W.3d 615, 629 (Tex. App.—Dallas 2015, no pet.)))). "[T]he actual malice standard focuses on the defendant's state of mind at the time of publication" and is usually "proved by circumstantial evidence." *Loco Brands*, 2020 WL 809284, at *8 (citations omitted).

Contrary to Accresa's assertions, the Report specifically identifies the following internal communications from the relevant time frame :

- In a July 19, 2018 message thread between Short and Richter, Short noted providers he wanted to win. He then stated as follows: "we just need to engage in a strategy with Hint that keeps them distracted." (Report at p. 44) (citing Hint Dep. Ex. 146 at p. 9). Richter stated "we win by attacking from all angles. I am not taking anything for granted." *Id.* Short then stated "and causes serious pause for their investors." *Id.*

- A few days before Accresa filed this lawsuit on July 31, 2018, Morales told Valenti to tell the Accresa team"we are going after Hint." (Report at p. 46, n. 20) (quoting Morales Dep. at 91:2-17). In a chat transcript between Morales and Valenti dated July 26, 2018, Morales stated Short told the Accresa team that Accresa was "going after Hint." (Report at p. 53) (quoting Morales Dep. at 90:20–91:17).

- Accresa retained a public relations firm, JConnelly, to draft "talking points" for Accresa to share "when speaking with prospects, partners and clients." (Report at p. 53) (citing Hint Dep. Ex. 234). The August 2, 2018 "Accresa talking points re: complaint" include:

Hint Health received proprietary information, access to, and technology developed by Accresa to secretly develop its own imitation of Accresa's business model and in particular, a provider network.

\* \* \*

Call to Action:
> • As a valued client/partner/prospective client, we ask that you continue to work with Accresa, and understand that we have acted in good faith while Hint Health has not.
> • We ask that you be aware of the situation with Hint Health and to be cautious in any conversations/agreements you may have with them, should they continue to contact you.
> • Stop conversing with Hint Health; do not enter into agreements with Hint (Can we say this? Perhaps leave this one out)

• On August 1, 2018, the Accresa team had a call with Allied to let them know about the lawsuit and "trying to call all potential affected parties to send the message" regarding Hint, which "took over the day priorities." (Report at p. 54) (quoting Hint Dep. Ex. 339 at ACC0057801). Morales also noted she had a call with "pr today about the message." *Id.* at ACC0057802

• In an internal chat communication, Short explained to Richter, "As part of our Marketing Communication [sic] Campaign. . . . if we go down the rabbit hole . . . I want to buy ads . . . spray our story . . . put [Hint] on their heels to have to address this issue . . . this battle must have several fronts . . . war rather." (Report at p. 54) (citing Hint Dep. Ex. 171).

• In another internal chat communication, Short explained to Accresa's marketing manager, Kathleen Davis, "I want to blast the world . . . someone searches Direct Care and Hint . . . BOOM." (Report at p. 54) (citing Hint Dep. Ex. 172 [sic]).

Report at pp. 53–54.

The Magistrate Judge did not err in finding a fact issue as to whether Accresa made the alleged defamatory statements with the requisite negligence, malice, or reckless disregard to sustain Hint's claims for defamation and business disparagement. The Court also finds, contrary to Accresa's next assertion, the evidence of record establishes a genuine issue of material fact as to the causal link between Accresa's defamatory statements and Hint's injury. Accresa argues Hint cannot

show any causal link between the alleged defamatory statements and Hint's alleged damages of losing out on business opportunities with the following five lost prospects: Catalyst Health, Access Healthcare Direct, Ms. Medicine, R-Health, and SALTA Direct. (Dkt. #144 at p. 20). However, as the Magistrate Judge points out, Holdsworth's testimony as to Hint's lost opportunities and harm to Hint's brand and goodwill is sufficient to raise a fact issue. Report at pp. 100–01 & n.37 (citing *Med. Components, Inc. v. Osiris Med., Inc.*, No. EP-15-CV-305-PRM, 2017 WL 749020, at *2 (W.D. Tex. Feb. 24, 2017)). Holdsworth specifically identified lost clients as a result of Accresa's defamatory statements, including clients listed in the Yu Report, among others. *Id.* at 101.

Accresa claims the Magistrate Judge erred in finding Hint has not disclaimed general damages because its corporate representative did not explicitly disclaim them. (Dkt. #144 at p. 21) (citing Report at p. 98) ("As an initial matter, the Court finds without merit Accresa's argument that Hint has disclaimed any general damages and is only seeking pecuniary damages allegedly suffered as a result of the lost prospects listed in expert report of Chin Yu. In his deposition, Hint's corporate representative Nolan agreed that page 7 of Yu's report is the total damages Hint is alleging it suffered as a result of Accresa, and that number is $2,021,925. Nolan Corp. Rep. Dep. (excerpts attached as Exhibit A to Accresa's reply) at 191:4-17. However, in confirming the specific amount of damages addressed by Yu in his report, Nolan did not address, much less disclaim, general damages.").

According to Hint's response to Accresa's objections, in its summary judgment briefing, Accresa did not rebut Hint's record evidence of specific damages. (Dkt. #149 at p. 15).  Hint asserts its summary judgment briefing addressed its claims for special damages (and disgorgement). *Id.* (citing Dkt. #117 at p. 4 ("Hint's evidence and pleading of its damages theories, which include

general damages, special damages, lost profits, disgorgement, and expense accrued in counteracting Accresa's disparagement" complements Hint's corporate representative testimony.)). The Magistrate Judge did not err in finding Hint has not disclaimed any general damages and is only seeking pecuniary damages allegedly suffered as a result of the lost prospects listed in the expert report of Chin Yu.

On the issue of special damages for Hint's business disparagement claim,[5] Accresa contends the record evidence the Report identifies, Holdsworth's testimony "that Hint lost the specific clients because of Accresa's partnership with Twin Oaks, without more" is insufficient to "satisfy the heightened standard of showing allegedly defamatory statements played a substantial part in Hint's lost sales." (Dkt. #144 at p. 15). According to Accresa, Holdsworth testified it was Accresa's partnership with Twin Oaks that caused Hint to lose prospects, not Accresa's alleged defamatory statements. *Id.*

According to Hint, Holdsworth did not testify that Accresa's partnership with Twin Oaks was the sole cause of Hint's lost prospects. Rather, Holdsworth specifically identified Hint lost prospects and clients due to Accresa's defamation.[6] (Dkt. #149 at p. 16). Additionally, as urged by Hint in its

---

[5] As noted by the Magistrate Judge, the final business disparagement element – special damages – requires "that the plaintiff 'establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'" Report at p. 102 (quoting *Loco Brands*, 2020 WL 809284, at *9 (quoting *Teel v. Deloitte & Touche L.L.P.*, 2015 WL 9478187 at * 4 (N.D. Tex. December 29, 2015) (quoting *Hurlbut v. Gulf Atlantic Life. Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987)))). "Furthermore, the communication must play a substantial part in inducing others not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established." Report at p. 102 (quoting *Loco Brands*, 2020 WL 809284, at *9 (quoting *Hurlbut*, 749 S.W.2d at 767 (citation omitted in *Loco Brands*))).

[6] Holdsworth testified regarding the harm Hint suffered as a result of the conversations between Accresa and Nextera, stating that broadly speaking the defamation hurt Hint's brand and its goodwill. Holdsworth Dep. at 95:6-22. Holdsworth further stated "at a high level it hurts our reputation, hurts five years or six years of brand development. . . ." *Id.* at 97:7-98:20. Holdsworth also testified that the Accresa/Twin Oaks's partnership interfered with Hint's business prospects for Access Health Direct, and also how Accresa's alleged defamation also interfered with Strada and Access Health Direct. *Id.* at 119:16-121:10, 127:17-128:24. Holdsworth also mentioned Accresa's actions led to lost opportunities with Catalyst Health. *Id.* at 126:7-25. He also testified that Hint lost out on the Ms. Medicine opportunity

response to Accresa's objections, David Porter's November 5, 2018 email to Accresa is evidence

of clients leaving Hint for the Accresa/Twin Oaks platform as a result of Accresa and Twin Oaks'

alleged joint disparagement campaign. *Id.* (citing Report at pp. 122–23 ("Need contacts for RHealth

and Catalyst please. We are cooking with gas now. Hint is reeling from the pain, Doctors coming

over to us for the corporate platform like crazy, also panic leaving Hint. . . . We have the momentum

now. Affiliates signed this week, consultant/brokers next week, 8 or 9 small deals in process."

(quoting Hint Dep. Ex. 292))). The Court, viewing all of the evidence in the light most favorable to

Hint, agrees with the Magistrate Judge and finds a reasonable juror could find "specific lost sales,

loss of trade, or loss of other dealings." Report at p. 102 (citing *Rail Scale*, 2017 WL 319078, at *4).

In its last sub-argument in its second main objection, Accresa asserts the Report errs in its

conclusion that Hint states a *prima facie* claim for false advertising under the Lanham Act. (Dkt.

#144 at pp. 16-17). Relying on its earlier arguments, Accresa argues the alleged false or misleading

statements were not false or misleading; Hint has offered no evidence to show the alleged statements

deceived third parties; and Hint has offered no evidence that Hint has suffered injury or damages as

a proximate result of any alleged statements. *Id.*

According to Hint, "Accresa objects to the Report's conclusions concerning Hint's Lanham

Act claims only to the same extent that it objects to the Report's findings on similar issues of the

defamation and business disparagement claims—Accresa's statements were true and Hint cannot

show damages." (Dkt. #149 at p. 16). Hint points out, as did the Magistrate Judge, that while Accresa

---

"partly because of Twin Oaks and their partnership with Accresa. . . and then . . . the sort of bad rumors I guess that were
formed as a result of the defamation." *Id.* at 130:5-12. According to Holdsworth, Hint lost out on the Our Health
opportunity because "instead of collaborating on that prospect they went around us and did a direct deal and didn't bring
us into the deal. . . ." *Id.* at 130:17-131:1. Regarding SALTA Direct, Holdsworth testified Hint lost out on that
opportunity because Accresa promoted Twin Oaks as a partner instead of Hint. *Id.* at 131:5-25.

moved for summary judgment on Hint's false advertising claim, with the exception of one footnote regarding Hint's failure to allege Lanham Act damages specific to Accresa "Accresa does not substantively address either Lanham Act counterclaim [under § 1125(a)(1)(A) or § 1125(a)(1)(B)] in its reply." *Id.* at p. 17 (quoting Report at p. 105).

To establish a *prima facie* case for false advertising under § 1125(a)(1)(B) of the Lanham Act, a plaintiff must show that (1) the defendant made a false or misleading statement of fact about a product; (2) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception is material in that it is likely to influence the consumer's purchasing decision; (4) the statement entered interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result. *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 762 (N.D. Tex. 2013) (citing *Logan v. Burgers Ozark Country Cured Hams Inc*., 263 F.3d 447, 462 (5th Cir.2001); also citing *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. 3:02–CV–2727–G, 2004 WL 833595, at *17 (N.D. Tex. Apr. 19, 2004)). If the statements at issue are shown to be literally false, a court must assume the statements actually misled consumers, without requiring any evidence of their impact on consumers. *Selander*, 932 F. Supp. 2d at 762 (citations omitted).

Contrary to Accresa's objection, Hint has introduced sufficient evidence that raises genuine issues of material fact regarding whether Accresa's statements were either literally false or misleading. Report at p. 107 (citing *Greater Houston Transportation Co. v. Uber Techs., Inc*., 155 F. Supp. 3d 670, 701 (S.D. Tex. 2015)). As correctly noted by the Magistrate Judge, the evidence presented requires a fact-intensive inquiry regarding the veracity of Accresa's statements as a whole, and "clearly leaves a disputed issue of material fact that must be determined by the jury." *Id.* (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1139, 1146 (9th Cir.1997) (reversing summary

37

judgment where a reasonable juror could conclude advertisements were literally false)). "The literal falsity or misleading nature of a statement is a question of fact, and summary judgment should not be granted where a reasonable jury could determine the veracity of the statements at issue." Report at p. 107 (quoting *Greater Houston Transp.*, 155 F. Supp. 3d at 701 (citing, among other cases, *Mission Pharmacal Co. v. Virtus Pharmaceuticals, L.L.C.*, 23 F. Supp. 3d 748, 769 (W.D. Tex. 2014) (finding a genuine issue of material fact whether a competitor made false or misleading statements about its product))).

Because the Magistrate Judge found an issue of material fact with regard to whether Accresa's statements are literally false or misleading, she noted she could not determine at this time whether Hint has adequately demonstrated the materiality of Accresa's representations. Report at p. 108 (citing *Greater Houston Transp.*, 155 F. Supp. 3d at 702 (citing *Logan*, 263 F.3d at 462)); *see also OrthoAccel Techs., Inc. v. PropelOrthodontics, L.L.C.*, No. 4:16-CV-00350-ALM, 2017 WL 1495177, at *3 (E.D. Tex. Apr. 26, 2017) (citing *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir.2000) ("With respect to materiality, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on customers."); also citing *S&H Industries, Inc. v. Selander*, 932 F. Supp. 2d 754 (N.D. Tex. 2013) (citing *Logan*, 263 F.3d at 462; *Pizza Hut*, 227 F.3d at 497) ("If the statements at issue are shown to be literally false, a court must assume that the statements actually misled consumers, without requiring any evidence of their impact on consumers.")).

As properly explained by the Magistrate Judge, a determination of falsity would eliminate Hint's burden to demonstrate the materiality of Accresa's statements. Report at p. 108. The Court must allow for a determination of the nature of Accresa's statements before reaching the question

of whether Hint should be subject to the increased burden of adducing evidence of materiality. The Court agrees with the Magistrate Judge and finds the question of the impact of Accresa's statements, and the materiality of Accresa's statements, remain a disputed fact issue.

Regarding Accresa's argument regarding proximate causation, Hint asserts in response that "Accresa does not object to nor refute the presumption of causation for Lanham Act claims in a two-competitor market when the defendant engages in false competitive advertising." (Dkt. #149 at p. 17) (citing Report at p. 109 n.39; also citing *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL 1370545, at *3 (E.D. Tex. Apr. 10, 2017)).[7] Hint further asserts Accresa makes the mistake of "conflating the injury requirement for the false advertising claim with the requirement that a plaintiff prove his actual damages in order to obtain relief." (Dkt. #149 at p. 17) (citing Report at pp. 109–10 (citing *Logan*, 263 F.3d at 462–63)).

The Magistrate Judge concluded as follows:

> The Court is not persuaded Hint cannot prove it has suffered any damages arising from its Lanham Act counterclaims. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 135–36, 134 S. Ct. 1377, 1392, 188 L. Ed. 2d 392 (2014) (stating that even when a plaintiff cannot quantify its losses with 'sufficient certainty to recover damages, it may still be entitled to injunctive relief under § 1116(a) (assuming it can prove a likelihood of future injury) or disgorgement of the defendant's ill-gotten profits under § 1117(a)'). After a careful review of the record and the arguments presented, the Court is not convinced there are no material issues of fact entitling Accresa to judgment as a matter of law on Hint's false advertising counterclaim. *OrthoAccel*, 2017 WL 1495177, at *4. . . .

---

[7] As noted by the Magistrate Judge, in *Robroy*, the plaintiff invoked a line of cases holding that deliberately false or deceptive comparative advertising gives rise to a rebuttable presumption that the causation element of the Lanham Act cause of action is satisfied. Report at p. 109 n.39 (citing *Robroy*, 2017 WL 1370545, at *3). The court noted a number of circuits have adopted the presumption of causation in cases involving a "two-competitor market," and "numerous district courts have reached the same conclusion, including district courts in the Fifth Circuit." *Id.* (collecting cases). Relying on this line of cases, Hint argues causation is presumed because this case involves a two-competitor market. (Dkt. #116 at p. 5). According to Hint's underlying briefing, "the two competitors shifted, beginning with Hint and Twin Oaks, and now Hint and Accresa." (Dkt. #105 at p. 12, n. 1).

Report at pp. 110-11.

Federal Courts have routinely held that injury should be presumed when a Lanham Act claim involves false or misleading comparative advertisements. *Greater Houston Transportation Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 703 (S.D. Tex. 2015) (citing *Healthpoint Ltd. v. Stratus Pharm., Inc.*, 273 F. Supp.2d 871, 885 (W.D. Tex.2001); also citing *Time Warner Cable, Inc. v. DIRECTTV, Inc.*, 497 F.3d 144 (2d Cir.2007); also citing *Porous Media Corporation v. Pall Corporation*, 110 F.3d 1329 (8th Cir.1997); also citing *McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34 (2d Cir.1988)). Because the Court has found the question of the literal falsity or allegedly misleading nature of Accresa's representations is a question of fact to be determined at trial, Hint's argument about whether injury should be presumed should be addressed after the trier of fact addresses that threshold question. *Greater Houston*, 155 F. Supp. 3d at 703 (stating the "determinations of the trier of fact regarding the nature of Uber's statements directly impact the presumption of injury question"). Similar to the court in *Greater Houston*, the Court finds there are genuine issues of material fact remaining regarding injury on the basis of Accresa's alleged statements. *Id.* at 703-04. In sum, there remain genuine issues of material fact regarding Hint's claim of false advertising under the Lanham Act.

### *Discussion of third main objection*

In its third main objection, Accresa objects to the Report's analysis of its motion for summary judgment on Hint's breach of contract counterclaim. In addition to Hint's tort and tort-derivative claims, Hint counterclaimed against Accresa for breaching the Hint Terms of Service, Section Five of the PPA, and Section Seven of the PPA. (Dkt. #34, ¶¶ 25-31). Hint alleges Accresa breached the PPA by: "a. failing to act in good faith and failing to employ any and all commercially reasonable

means to effectuate and support the integration of the API as contemplated in the PPA; and b. entering into a substantially similar technical integration arrangement, joint marketing arrangement or revenue sharing arrangement with a direct competitor of Hint." *Id*., ¶ 29. Hint further alleges "Accresa breached the Hint Terms of Service by reverse engineering, decompiling, copying, modifying or creating derivative works based on, selling, reselling, displaying, disseminating, renting or leasing the Hint Health Service or Site or part thereof." *Id*., ¶ 30.  Hint alleges "Accresa's breach caused Hint injury, specifically including lost profits Hint would have realized had Accresa performed its contractual obligations and additional consequential losses Hint has accrued because Accresa partnered with Twin Oaks in violation of the PPA." *Id*., ¶ 31. Hint further seeks recovery of its reasonable and necessary attorney's fees for Accresa's breach of contract pursuant to Texas Civil Practice and Remedies Code § 38.001. *Id*., ¶ 32.

As previously stated, the Magistrate Judge recommended Accresa's motion for summary judgment regarding Hint's breach of contract claims be granted in part and denied in part. Specifically, the Magistrate Judge recommended Accresa's motion for summary judgment regarding Hint's counterclaim for attorneys' fees under § 38.001 of the Texas Civil Practice and Remedies Code be granted, but the remainder of the motion be denied. Report at pp. 142-172. After six pages of substantives discussion of the evidence of record, the Magistrate Judge found there is a genuine issue of material fact Hint performed under the contract. *Id.* at pp. 143-49. After almost another twenty pages of discussion, the Magistrate Judge concluded there is a genuine issue of material fact as to whether Accresa breached the Terms of Service, Section Five of the PPA, and Section Seven of the PPA. *Id.* at pp. 149-68. Finally, the Magistrate Judge found a genuine issue of material fact as to whether Accresa's alleged breaches caused Hint to suffer damages. *Id.* at pp. 168-71.

In its first sub-argument in its third main objection, Accresa asserts the Report erroneously

recommends that genuine issues of material fact exist as to whether Hint performed under the PPA.

(Dkt. #144 at pp. 17-18). Specifically, Accresa argues as follows:

> During his deposition, Dan Slate, the employee in charge of the integration at Hint
> after Jonathan Avida's accident and departure, testified that as of July 2018, Accresa
> was not part of Hint's strategic plan or product roadmap and Hint had no plan to
> complete the integration with Accresa. Dkt. No. 95 (Ex. 7), Slate Dep. Tr. at
> 65:16-72:5.; Dkt. No. 95 (Ex. 12), Hint's Roadmap. The Report's reliance on
> evidence that Avida responded promptly via e-mail on a couple of occasions in 2017
> is not significant probative evidence that Hint performed its obligations under the
> PPA or that it continued performing its obligations after Avida left Hint. Report at
> 146. Even viewing the evidence in the light most favorable to Hint—namely that
> there were two separate work streams of a 'technical work side and a product
> workside'—Hint cannot offer no evidence that it performed its obligations on the
> product work side. *See* Report at 147-48 (citing Hilkert Dep. Tr. at 129:9-18.) Slate
> admitted that as of July 2018, more than a year after Hint signed the PPA, Hint had
> not completed ***any*** development work on the integration. Dkt. No. 95 (Ex. 7), Slate
> Dep. Tr. at 52:17-53:13 (emphasis added). Based on this evidence, no reasonable
> juror could return a verdict for Hint that it performed under the PPA. . . .

*Id.*

In its response to Accresa's objections, Hint contends the "record is replete with evidence

of Hint's performance, much of which was incorporated into the Report." (Dkt. #149 at p. 18). The

Court agrees. The Report cites the testimony of Dan Slate relied upon by Accresa. Report at pp. 143-

45. However, the Report also cites the extensive evidence and arguments relied upon by Hint to

demonstrate there is a genuine issue of material fact whether it performed, tendered performance,

or was excused from performance of the PPA.[8]  Hint presented evidence that its understanding of

---

[8] According to Hint, as Accresa was allegedly developing its platform to integrate with Hint's API in late 2017 and early 2018, Hint's obligations were to support the integration and assist Accresa's development team as they encountered issues. Report at p. 145 (citing Dkt. #104 at p. 4). Hint contends it performed its obligations or tendered performance by assisting Accresa with the integration into Hint's API as technical issues arose. *Id.* (citing Dkt. #104 at p. 3). Hint states it continued to tender performance and make itself available for technical support on the integration, as needed and as requested, even after Avida's tragic accident in December 2017. *Id.* (citing Dkt. #104 at p. 4).

the PPA was the Accresa-Hint integration would involve Accresa writing code "into their platform" that would then make requests of Hint's API.[9] Melcher Dep. at 95:6–96:19; Hilkert Dep. at 97:16–98:21 ("my understanding was that Accresa would be building against our public API, which I'd help build and support, that I may need to provide them support during that time, but that there would not be major engineering lifts . . . .").

The Report cites Avida's initial responsiveness to Accresa's requests for integration support. Report at p. 146 (citing Diosdado Dep. at 89:7-90:3, 113:15-23, 129:3-130:25, 134:14-135:4; also citing Fernandez Dep. at 8:10-9:1). The Report also cites evidence that Hint was unaware of any additional work it was required to undertake to complete the integration. Report at pp. 147-148 (citing Demkiw Dep. at 98:2-8 ("[Accresa was] integrating to our API, so we weren't building. They were building the integration."); also citing Hilkert Dep. at 111:22-112:25 ("[T]here was not active engineering work at Hint for [the integration] . . . [t]here was not a feature that was being actively developed" on the Hint side of the integration.)).

According to Hint, "Accresa fumbles with distinguishing the *technical* and *product* sides of the integration." (Dkt. #149 at p. 19) (emphasis in original). Hint asserts the Report correctly identifies fact disputes as to both. Hint asserts either Hint had no further performance obligations on the technical side of the integration because Accresa was building into Hint's API or Hint adequately performed in light of Avida's responsiveness. *Id.*

---

[9] In the Rebuttal Expert Report of Nancy Miracle dated September 16, 2019, Hint's technical expert explains the "nature of an API is that the party making the requests (Accresa, in this case) must be familiar with the features of the system they are accessing through the API (the Hint system in this case), but the converse is not true: the system accessed through the API needs to have no knowledge of the requesting system and typically will not even have access to the requesting system." Miracle Report (attached as Exhibit 9 to Accresa's breach of contract motion for summary judgment) at pp. 39-40. According to Miracle, Hint's API allows "appropriately credentialed programs to make API calls and access the Hint back end." *Id.* at p. 40.

As set out in the Report, Hilkert explained there was a technical work side and a product work side, and he did not know of anything Accresa needed on the technical side. Report at p. 148 (citing Hilkert Dep. at 129:9-18). According to Melcher, Hint's CTO and corporate representative on technology-related issues, technical integration would typically "be managed by someone on the partner side, not [Hint's]," but that "lack of progress" forced Avida to "step[] into that role." Report at p. 146 (citing Melcher Corp. Rep. Dep. at 71:21–72:20). On the product side, the Report considered Avida's responsiveness and the fact that Hilkert and Melcher "fill[ed] in the gaps as best as [they] could" after Avida's accident. The Report also cited evidence regarding Holdsworth's correspondence with Short in the Spring of 2018 about next steps. While Accresa points to Slate's testimony as conclusive evidence that Hint failed to perform its obligations, the Court finds, based on all of the evidence of record, a genuine fact issue exists regarding Hint's performance.

Accresa further asserts the Report erroneously recommends that genuine issues of material fact exist as to whether Accresa breached the PPA. Specifically in this regard, Accresa argues as follows: (1) the Report erroneously recommends there is a genuine fact issue that Accresa breached the Terms of Service; (2) the Report erroneously recommends there is a genuine issue of fact whether Accresa breached Section Five of the PPA; (3) the Report erroneously recommends there is a genuine issue of material fact that Accresa breached Section Seven of the PPA; and (4) the Report erroneously recommends there is a genuine issue of material fact whether Accresa's alleged breaches of the PPA and Terms of Service caused Hint to suffer damages.

In response, Hint asserts Accresa's breach is evidenced by its improper sharing of confidential information and development of competing functionality, its indefinite cessation of integration efforts, and its execution of a substantially similar agreement with Hint's competitor,

Twin Oaks. (Dkt. #149 at p. 18).

Regarding whether there is a genuine issue of material fact whether Accresa breached

Hint's Terms of Service, Accresa argues the recommendation should be rejected because the Report

"relies on evidence that Hint did not identify through its corporate representative," it overvalues

Miracle's conclusions,[10] and it improperly considers "evidence of whether Accresa solicited Hint's

clients and prospects, which Hint never pled constitutes a violation of the Terms of Service." (Dkt.

#144 at pp. 18–19). According to Hint, Accresa ignores the evidence cited in the Report, including:

(1) Accresa's extensive use of Hint's platform on between October 2015 and August 2016; (2)

Accresa's explicit strategy of developing "Hint takeover functionalities;" and (3) Richter's

discussion with Short about Accresa needing "someone with a login to be able to see what [Hint's]

doing exactly." (Dkt. #149 at p. 20) (citing Report at pp. 150-53 (citing Dep. Exs. 208, 242 at

ACC0039521-22; also citing Hicks Dep. at 24:13-18, 25:3-14, 25:22-27:2; also citing Fernandez

Dep. at 65:25-66:20; also citing Diosdado Dep. 65:15-66:5)).

As the Report concluded, this evidence is sufficient to establish a genuine fact issue

concerning Accresa "reverse engineer[ing], decompil[ing], copy[ing] . . . or creat[ing] derivative

works of or based on . . . the Hint Health Service or Site or any part thereof." Report at p. 151 (citing

Hint Dep. Ex. 77). The Court finds Accresa's arguments without merit.

Regarding whether there is a genuine issue of material fact as to whether Accresa failed to

use good faith and any and all commercially reasonable means to effectuate the integration with Hint

---

[10]   In her rebuttal expert report, Miracle discusses the meetings between Hint and Accresa before and after the PPA was signed that are contained in the Bergeron Report. Miracle Report (attached as Exhibit 9 to Accresa's breach of contract motion for summary judgment) at pp. 40-42. In Miracle's opinion, "given that the meetings documented in the Bergeron report occur years after Hint's customers were using Hint software to manage affiliations and before Accresa had even begun to develop its own affiliation support in 2018, it might as well be argued that Accresa developed their affiliation management software after being exposed to Hint's implementation." *Id.* at p. 42.

in violation of Section Five of the PPA as held by the Magistrate Judge, Accresa re-urges its argument that the record reflects Accresa actually built a bi-synchronous integration by December 2017 and Hint accepted Accresa's performance based on Avida's statement it "looks really good." (Dkt. #144 at p. 19) (citing Dkt. #96 (Ex. 8); also citing Melcher Dep. at 71:21-72:3). According to Hint, not only is this evidence "inconclusive of Accresa's good faith performance, but it is [also] contradicted by other evidence cited in the Report." (Dkt. #149 at p. 21).  Hint refers to the evidence cited in the Report indicating Accresa prioritized other projects over the integration, referred to the integration as a "massive time suck," considered "pulling back" from the partnership, had open development issues on its side, and "hit pause" on the integration putting "[Hint] on hold indefinitely." *Id.* (citing Report at pp. 154-159; also citing Short Dep. at 184:5-185:2, 188:6-189:23; also citing Diosdado Dep. at 158:1-9, 129:19-131:1, 171:12-173:13; also citing Hint Dep. Ex. 333).

What is more, the Magistrate Judge noted Melcher did not believe the December 2017 demo had "bi-directional syncing between the systems." Report at p. 156 (citing Melcher Corp. Rep. Dep. at 75:15-76:6). Melcher stated bi-directional syncing was one part of the purpose of integration, and he explained it is more complicated than a "simple form of data syncing." *Id*. at 76:20-24; *see also id.* at 74:25-75:23 (further describing bi-directional syncing as a "change in one system would propagate to the first and a change in that system might propagate to the second" but that "typically bi-directional syncing would be much further down the road"). The Magistrate Judge also cited testimony from Accresa's development team which indicates, when viewed in the light most favorable to Hint, Accresa never completed the integration and various issues remained open on Accresa's side. Report at pp. 156-57 (citing Valenti Dep. (excerpts attached as Exhibit L to Hint's summary judgment motion) at 68:16–21 ("Q. Do you recall, did Accresa ever complete its work on

the Hint integration? A. No. Q. No, I'm – 'no' you don't recall, or 'no' it did not. A. No, it did not.");

also citing Diosdado Dep. at 171:12–173:19).[11]

The Court finds Accresa's arguments without merit. As properly held by the Magistrate

Judge, there is a fact issue regarding whether Accresa built a "bi-synchronous integration" by

December 2017. Report at p. 159. The Court finds there is a genuine issue of material fact regarding

whether Accresa breached Section Five of the PPA.

Regarding whether there is a genuine fact issue regarding whether Accresa entered into a

"substantially similar technical integration arrangement, joint marketing arrangement, or revenue

sharing arrangement with a direct competitor of Hint" in violation of Section Seven of the PPA,

Accresa argues the "recommendation is based on deposition testimony that is speculative in nature,

and not a close reading of the two contracts." (Dkt. #144 at p. 20). According to Accresa, looking

at the contracts themselves, "there is insufficient probative evidence that Accresa's agreement with

Hint and Accresa's agreement with Twin Oaks are 'substantially similar' technical integration, joint

marketing, and/or [sic] revenue-sharing arrangements." *Id.* Accresa further asserts Hint's corporate

representative Nolan did not know enough about Accresa's integration with Twin Oaks to speak to

its substantial similarity. *Id.* (citing Nolan Corp. Rep. Dep. at 95:18-96:1 (stating, among other

things, "I think I am not aware personally of what the actual technical piece of that is")).

Again, the Court finds these arguments without merit. As urged by Hint in its response to

---

[11] In an email dated November 28, 2017 from Fernandez to Matt Palubicki, Fernandez stated "Accresa phase 1 for Hint integration has been completed. We will be meeting with Hint to discuss next steps." Fernandez Dep. at 129:19-130:1. According to Fernandez, there was still a "next phase" or phase 2, which Avida had explained prior to his accident. *Id.* at 130:2-18. Fernandez further indicated that around that same time the Twin Oaks integration was approximately 75 percent complete. *Id.* at 130:19-131:1.

Accresa's objections, Accresa ignores the Report's textual analysis of the parties' contracts and conclusion that both contain similar joint marketing and revenue sharing provisions. Report at p. 165. According to the Magistrate Judge, "[e]ven though there are differences between the PPA's joint marketing and revenue sharing agreements and 'their counterparts in the Twin Oaks agreement,'" there is still a genuine issue of material fact as to whether the agreements are substantially similar. *Id.* Despite the differences in the joint marketing and revenue sharing terms of the PPA and the Twin Oaks agreement, the Court agrees with the Magistrate Judge a reasonable jury could conclude they are substantially similar in light of their common purpose (marketing the integration and sharing resulting revenue) and the parties' testimony regarding their interpretation of the PPA. Report at pp. 165-66 (citing Richter Dep. at 268:11–269:19 (testifying she "wouldn't think it was appropriate to proactively market Twin Oaks at the expense of Hint")).

The Report also cited evidence that Accresa's integration with Hint and Twin Oaks were technically similar. Report at pp. 163-64. In its objections, Accresa argues, as it did before the Magistrate Judge, Accresa employee Theresa Fernandez explained that the Twin Oaks integration required patient data for Twin Oaks to print out membership cards, and printing membership cards is "nothing like the stated goal of the Hint integration." (Dkt. #144 at p. 20). The Magistrate Judge noted Hint's argument in its surreply that the agreement between Accresa and Twin Oaks does not limit technical integration to membership cards and describes the parties modifying their respective systems to connect Accresa's employer platform with Twin Oaks' provider platform, just like the PPA with Hint. Report at p. 164, n.56. According to the Magistrate Judge, "[b]oth agreements commit to technical integration of the parties' platforms in furtherance of the partnerships' common purpose." *Id.* at p. 165 (comparing PPA, §§ 1 and 5 with Accresa/Twin Oaks Agreement, § 2.2).

What is more, the Magistrate Judge cited evidence indicating both integrations involved syncing physician data. *Id*. at p. 163 (citing Diosdado Dep. at 177:16-18). Accresa's development team grouped the integrations together because of their technical similarity. *Id.* (citing Diosdado Dep. at 176:12-177:8).

Accresa next objects to the Report's recommendation that there is a genuine issue of material fact whether Accresa's agreement with Twin Oaks falls within the exception outlined in Section Seven of the PPA. (Dkt. #144 at p. 21).  The relevant provision provides as follows:

> Nothing in this Section shall be construed to prohibit either Party from entering into a business agreement with a client, prospect, partner, or the like that does not require a technical integration substantially similar to that contemplated under this Agreement, nor shall anything in this Section be construed to prevent either Party from entering into or continuing a business agreement of any nature with a client, prospect, partner or the like that 1) already has a relationship or 2) wishes to enter into a business relationship with a direct competitor of one of the Parties that does not violate the terms of an existing agreement between such client, prospect, partner or the like and a Party.
>
> Furthermore, nothing in this Section shall be construed to give rise to an obligation for either Party to prevent any other person, business or entity from marketing or otherwise promoting partnership or other business relationship it may have with a Party.

PPA, § 7.

Among other evidence, the Magistrate Judge cited the following in her discussion regarding the exception outlined in Section Seven of the PPA. Although Accresa and Hint extensively negotiated regarding exclusivity prior to the execution of the PPA on June 9, 2017, the Accresa team was told on June 13, 2017, that Accresa and Hint did not "have an exclusive agreement, so it doesn't preclude us from signing an agreement with one of their competitors for example Twin Oaks." Report at p. 167 (citing Morales Dep. at 32:12–34:7). A June 20, 2017 internal email from Richter

to Short indicates Accrea saw itself as "best positioned and really the only viable competitor in the employer market." Report at p. 167 (citing Hint Ex. U (ACC05546011)). Notably, the 2017 DPC Summit recap further provided as followings: "Only 2 doing anything similar are Hint and Twin Oaks, and we're working to contract with both of them to lock up the ecosystem." *Id.*

Hint considers Twin Oaks a direct competitor. Report at p. 167 (citing Hint Response to Interrogatory No. 11 (attached as Exhibit 4 to Accrea's breach of contract motion for summary judgment)). Hint understood the exceptions in Section Seven did not permit Accrea to partner with Twin Oaks, a direct competitor of Hint's, in a substantially similar technical integration arrangement, joint marketing arrangement, or revenue sharing arrangement. Report at p. 167 (citing Nolan Corp. Rep. Dep. at 93:2-94:20). Specifically, Hint understood these exceptions as permitting Accrea to do business with third parties (such as providers) who use direct competitor Twin Oaks for practice management services instead of Hint. Report at pp. 167-68 (citing Nolan Corp. Rep. Dep. at 105:4–109:2).

Hint also presented some evidence Accrea knew that was Hint's intent. Report at p. 160 (citing Richter Dep. at 128:17–129:9 (testifying with regard to this provision it was her understanding that Twin Oaks was one of Hint's direct competitors that Hint "might want to avoid that happening"); also citing Short Dep. at 169:21–172:25 (testifying his understanding of "substantially similar technical integration arrangement" meant that neither party would engage in a substantially similar technical integration "similar to the integration that was built between the two parties" with "another party that was deemed to be a competitor or indirect competitor")); *see also* Report at p. 168 (citing Short Dep. at 174:22–177:13 & Richter Dep. at 129:18–130:16 (when deposed on the meaning of these exceptions, Accrea's CEO and former president could not offer

any interpretation other than the words used in the PPA)).

The Court finds Accresa's arguments regarding Section Seven of the PPA without merit and agrees with the Magistrate Judge there is sufficient evidence to create a genuine issue of material fact whether Accresa breached Section Seven of the PPA by entering into a substantially similar technical integration arrangement, joint marketing arrangement, or revenue sharing arrangement with Twin Oaks.

Finally, Accresa objects to the Report's recommendation that there is a genuine issue of material fact whether Accresa's alleged breaches of the PPA and Terms of Service caused Hint to suffer damages. (Dkt. #144 at pp. 21-22). Incorporating its earlier arguments by reference, Accresa argues in this last objection that "Hint never even attempts to connect Accresa's alleged breaches to any actual damages suffered by Hint." *Id*. at p. 22.  As urged by Hint in its response, Accresa does not object or respond to the record evidence relied upon in the Report in reaching this conclusion: "Hint [ ] produced evidence of Accresa and Twin Oaks' jointly marketing to Hint's customers and prospects;" Lubin testified that "Accresa was putting forth Twin Oaks as the preferred partner;" and Holdsworth testified that "instead of partnering with [Hint] as a preferred partner [Accresa] partnered with [Hint's] direct competitor" for clients listed in the Yu Report. Report at pp. 169–70.

The Court finds Accresa's argument without merit. As the Report properly found, Hint has shown sufficient evidence to establish a genuine issue of fact as to whether Accresa's breaches caused Hint's damages. Having found Accresa's objections to the Report without merit as to the ultimate findings of the Magistrate Judge, the Court now considers Hint's objection to the Magistrate Judge's recommendation that Accresa's motion for summary judgment on Hint's breach of contract counterclaim be granted regarding Hint's counterclaim for attorneys' fees under § 38.001 of the

Texas Civil Practice and Remedies Code.

**Hint's objection**

Hint filed an objection to the part of the Report which recommends it be precluded from recovering attorneys' fees from Accresa on Hint's breach of contract counterclaims. According to Hint, the Report does not acknowledge Hint raises the constitutional argument that Texas Civil Practice and Remedies Code § 38.001 violates the Equal Protection Clause. (Dkt. #145 at p. 2). Hint argues as follows:

> Here, both Hint and Accresa are asserting the exact same claims for breach of (the same) contract and both are seeking recovery of attorneys' fees for those exact same claims under Section 38.001. Accresa First Am. Compl., Dkt. # 1, ¶ 29; Hint Second Am. Compl., Dkt. # 34, ¶ 32. To hold that Accresa can recover its attorneys' fees if successful on its breach of contract claim but that Hint cannot, would violate the Equal Protection Clause. Historically, Texas corporations and limited liability companies have been treated similarly with respect to an award for attorneys' fees, and the legislature's expressed basis for enacting the statute as written is not a rational basis to distinguish between a corporation and a limited liability company.
>
> Because the Texas Supreme Court has not decided the issue, this Court must predict how the Texas Supreme Court would decide the issue. *See Baylor Health Care Sys. v. Nat'l Elevator Indus. Health Ben. Plan*, No. 3:06-CV-1888-P, 2008 WL 2245834, at *5 (N.D. Tex. June 2, 2008) ('The law is clear that federal courts, when interpreting state law, are bound to apply only the law as interpreted by the state's highest court' and '[w]hen the state's highest court has not yet spoken on an issue, the federal court must determine how the highest court might rule.') (emphasis added) (citing *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir. 1991) and *F.D.I.C. v. Abraham*, 137 F.3d 264, 267–68 (5th Cir. 1998)). The Texas Supreme Court would follow the United States Constitution and uphold that exposing corporations, but not limited liability companies, to potential liability for attorneys' fees under Section 38.001 violates the Equal Protection Clause.

*Id.* at p. 6.

According to Accresa's response to Hint's objection, neither the Magistrate Judge nor the undersigned can consider a constitutional challenge because Hint failed to first comply with Federal

Rule of Civil Procedure 5.1's procedures for raising a constitutional challenge. (Dkt. #148 at p. 2). Even if Hint had properly raised a constitutional challenge, Accresa asserts the Report's recommendation should be adopted because Hint failed to carry its burden under rational-basis review to negate every conceivable basis for the classifications created by § 38.001. *Id.*

Under § 38.001 of the Texas Civil Practice and Remedies Code, "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract." Report at p. 171 (quoting TEX. CIV. PRAC. & REM. CODE § 38.001(8)). Texas law authorizes a party to collect attorneys' fees in some types of actions—but only from an individual or a corporation. *Id.* (citing *Stabilis Fund II, L.L.C. v. Compass Bank*, No. 3:18-CV-283-B, 2018 WL3617971, at *3 (N.D. Tex. July 30, 2018)(citing TEX. CIV. PRAC. & REM. CODE § 38.001)). "Under the plain language of section 38.001, a trial court cannot order limited liability partnerships, limited liability companies, or limited partnerships to pay attorney's fees." Report at pp. 171-72 (quoting *CBIF Ltd. P'ship v. TGI Friday's Inc.*, Case No. 05-15-00157-CV, 2017 WL 1455407, at *25 (Tex. App.—Dallas Apr. 21, 2017, pet. denied)).

As noted by the Magistrate Judge, the undersigned has held § 38.001 does not authorize a party to collect attorneys' fees from a limited liability company. Report at p. 172 (citing *PEG Bandwidth TX, LLC v. Texhoma Fiber, L.L.C.*, 299 F. Supp. 3d 836, 848 (E.D. Tex. 2018)). As urged by Accresa in its response to Hint's objection, many other courts have also recognized that § 38.001 does not allow for the recovery of attorneys' fees from limited liability companies. (Dkt. #148 at pp. 2-3) (citing *James Construction Group, LLC v. Westlake Chemical Corporation*, 594 S.W.3d 722, 756-57 (Tex. App.—Houston [14th Dist.] 2019, pet. filed); *TEC Olmos, L.L.C. v. ConocoPhillips*

*Co.*, 555 S.W.3d 176, 188 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Vast Constr., L.L.C.*

*v. CTC Contractors, L.L.C.*, 526 S.W.3d 709, 728 (Tex. App.—Houston [14th Dist.] 2017, no pet.)

(holding Section 38.001 does not allow recovery of attorneys' fees against a LLC as a matter of law);

*Varel Int'l Indus., L.P. v. PetroDrillbits Int'l, Inc.*, No. 05-14-01556-CV, 2016 WL 4535779, at *7

(Tex. App.—Dallas Aug. 30, 2016, pet. denied) (mem. op.); *Choice! Power, LP v. Feeley*, 501

S.W.3d 199, 214 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (holding Section 38.001 does not

permit recovery against limited partnership); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 455

(Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D,

2015 WL 1000838, at *9–10 (N.D. Tex. Mar. 6, 2015)).

Hint cites a handful of older cases, asserting Texas courts have awarded attorney's fees under

§ 38.001 to various entities, including LLCs. (Dkt. #145 at pp. 2-3) (citing cases). In none of those

cases did a party object that the "individual or corporation" language precluded an award of fees to

an LLC. *Violetta v. Steven Bros. Sports Mgmt., L.L.C.*, No. 6:16-CV-01193-JTM, 2017 WL

1197662, at *3 (D. Kan. Mar. 31, 2017). As noted by the court in *Violetta*, "the courts that have

addressed the issue have found that the statute does not permit an award of attorney fees to an LLC."

*Id.* Given the significant weight of authority indicated above, and the plain language of the statute,

the court in *Violetta* predicted "that the Texas Supreme Court would conclude that an LLC is not an

'individual or corporation' within the meaning of § 38.001." *Id.*

The plain language of § 38.001 and the case law interpreting and applying it support the

Report's recommendation granting Accresa's motion for summary judgment on Hint's claim for

attorneys' fees under § 38.001.  Hint's main argument is the Report did not properly consider

whether "Texas Civil Practices and Remedies Code § 38.001, when applied in this case to

distinguish between corporations or limited liability companies, violates the Equal Protection Clause of the 14th Amendment to the United States Constitution." (Dkt. #145 at p. 1). The plaintiff in *Violetta* argued "that denying recovery of attorney fees from an LLC while permitting recovery from an individual or corporation would violate the Equal Protection Clause of the Fourteenth Amendment because there is no rational basis for such a distinction." *Id.*

Noting the plaintiff cited no authority for that argument, the court in *Violetta* rejected that argument as unpersuasive. *Id.* According to the court, under rational basis review, a classification is upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993)). The court stated it "is conceivable that the Texas legislature exempted entities such as LLCs from attorney fee liability because it believed doing so would foster small business growth or was otherwise economically beneficial." *Id.*

Similarly here, the Court finds Hint's constitutional challenge unpersuasive. First, Accresa persuasively argues the Court should not entertain any constitutional challenge because Hint failed to comply with Federal Rule of Civil Procedure 5.1. Rule 5.1 requires, among other things, "[a] party that files a . . . written motion, or other paper drawing into question the constitutionality of a federal or state statute [to] promptly: . . . (2) serve the notice and paper on the Attorney General of the United States" by either "certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose." *Mincey v. Jefferson Capital Sys., L.L.C.*, No. CV 19-285 (NLH/JS), 2019 WL 4686766, at *7 (D.N.J. Sept. 26, 2019) ("Plaintiff's failure to comply with the most basic of requirements – serving its papers upon the Government – deprives the Government of an opportunity to appear before the Court and defend its laws. In light of

Plaintiff's non-compliance with Rule 5.1, this Court declines to entertain Plaintiff's constitutional challenge."); *see also Kurtenbach v. Jackley*, No. CV 16-5021-JLV, 2018 WL 1542499, at *13 (D.S.D. Mar. 29, 2018) (reserving consideration of any challenge to the constitutionality of a prescription drug monitoring program until the plaintiff complied with Rule 5.1(a)(1)).

Second, even assuming Hint had properly raised a constitutional challenge, the Court agrees with Accresa that Hint has shown no plausible basis for finding the statute unconstitutional. *Violetta*, 2017 WL 1197662, at *3. Hint failed to negate Accresa's argument that the Texas Legislature could have rationally believed that insulating limited liability companies from fee awards would improve the economy by attracting business people desiring to form limited liability companies to Texas. (Dkt. #148 at p. 7) (citing Dkt. #111 at pp. 3–4). As noted by the court in *Violetta*, it "is conceivable that the Texas legislature exempted entities such as LLCs from attorney fee liability because it believed doing so would foster small business growth or was otherwise economically beneficial." *Id*.

On *de novo* review, the Court agrees with the Magistrate Judge that Accresa's motion for summary judgment regarding Hint's § 38.001 should be granted. Hint's objection is overruled. The Court now considers Twin Oaks' three main objections to the Report.

**Twin Oaks' objections**

### *Discussion of first main objection*

Hint asserts claims for violations of the Lanham Act and tortious interference with existing contract claims against Twin Oaks. (Dkt. #34, ¶¶ 33-39). Additionally, Hint alleges a conspiracy claim against Accresa and Twin Oaks. *Id*., ¶ 71. Twin Oaks moved for summary judgment on all three claims.

Regarding Hint's tortious inference with an existing contract claim, Twin Oaks argues Hint cannot show Twin Oaks had any knowledge of the contents of the PPA prior to entering into an agreement with Accresa. Twin Oaks states it was unaware of the exact date that Accresa entered into a business relationship with Hint. Twin Oaks further states it has not received, and is not anticipating receiving, any revenue as a result of Twin Oaks' business relationship with Accresa.

The Magistrate Judge found these assertions unpersuasive when viewing all of the evidence in the light most favorable to Hint. Report at p. 118. Having already found sufficient evidence to create a genuine issue of material fact regarding whether Accresa's agreement with Twin Oaks was a "substantially similar technical integration agreement" to the PPA which did not fall under the exceptions contained in Section Seven of the PPA, the Magistrate Judge determined fact issues exist as to the remaining elements of Hint's tortious interference claim against Twin Oaks, including: Twin Oaks inducing Accresa to breach the PPA, directly competing with Hint, having knowledge of Hint's negotiations with Accresa, and receiving compensation from its integration with Accresa. *Id*. at pp. 115–124. In its first main objection, Twin Oaks objects to the recommendation that Twin Oaks' motion for summary judgment as to Hint's tortious interference claim should be denied.

In its first sub-argument in its first main objection, Twin Oaks objects to the Report's finding that "Twin Oaks knew Hint was a direct competitor and therefore knew that partnering with Accresa to jointly market themselves to DPC providers would directly compete with Hint" as evidence of tortious interference with contract. (Dkt. #146 at p. 2) (citing Report at pp. 118-19). According to Twin Oaks, the evidence cited in the Report does not support a finding that Twin Oaks induced Accresa to breach its obligations under the contract, and thus the finding is not supported by the record evidence.  Twin Oaks also specifically objects to the Report's finding that "there is evidence

indicating Twin Oaks viewed Hint as a direct competitor and that it was aware that Accresa was talking to both Twin Oaks and Hint at the same time in June 2017 about partnerships."  (Dkt. #146 at p. 2) (citing Report at p. 119).

The Report cited evidence indicating Twin Oaks viewed Hint as a direct competitor and that it was aware that Accresa was talking to both Twin Oaks and Hint at the same time in June 2017 about partnerships. Specifically, in a July 9, 2018 chat, Richter indicated Accresa had received a call from Twin Oaks that morning "and they informed us that they're coming after Hint and Atlas and undercutting them on pricing to try to get them all to convert [sic], and using Accresa for their back-end." Report at p. 119 (citing Hint Dep. Ex. 283 at ACC0037149).

In a June 3, 2017 email from Short to Richter, Short stated as follows regarding a private dinner at the upcoming 2017 DPC Summit:

> Brian Forrest is hooked up with Twin Oaks and David Porter from Twin Oaks (he wants to sit down with us) will be at the Summit. Here is the tricky part, Twin Oaks and Hint truly hate each other (beyond the usually competitor hate). **I have set the expectation with both Twin Oaks and Hint that we are talking to both entities and both want to lock us down and we want to partner with both.** Hint wants their special integration (API exchange) and conversations with Twin Oaks has been about us 'dropping' off the payment and recon, which would work within the current discussion with Hint. Therefore, how we position the dinner (aka a presentation from Roger/ MCV/Marty/Kevin) might be a way to get everyone playing nice under the banner that we all need to work together on these Macro issues with us being the central point of influence?

Report at p. 119 (citing Hint Ex. X at ACC0016098 (emphasis added in Report)). In a June 20, 2017 email from Richter to Short, Richter stated the following "recap" regarding the 2017 DPC Summit:

> -If DPC continues to grow, we will be the best positioned and really the only viable competitor in the employer market. Only 2 doing anything similar are Hint and Twin Oaks, and **we're working to contract with both of them to lock up the ecosystem**.

Report at p. 119 (quoting Hint Ex. U at ACC0546011 (emphasis added in Report)).

According to Twin Oaks, statements made by Richter or Short are not evidence of what Twin Oaks might have known and fail to create a genuine issue of material fact which precludes summary judgment for Twin Oaks on Hint's tortious interference claim.  (Dkt. #146 at p. 2). Twin Oaks further argues the statement by Richter is inadmissible hearsay within hearsay and cannot be relied upon when ruling on Twin Oaks' motion.

In its response to Twin Oaks' objections, Hint asserts Twin Oaks does not directly object to the finding that it knew about the PPA or that it told Accresa it was "coming after Hint and Atlas . . . and using Accresa for their back-end." (Dkt. #150 at p. 2) (citing Report at p. 119). Hint further asserts Twin Oaks does not object to the finding that it knew Accresa had "set the expectation with both Twin Oaks and Hint that we are talking to both." *Id.* Instead, Twin Oaks asserts it was "unaware of the date" the PPA was signed and was not "privy to the specifics." (Dkt. #146 at p. 3). According to Hint, Twin Oaks "then tries to undermine the Report's inducement finding by objecting to the evidence as inadmissible hearsay within hearsay." (Dkt. #150 at p. 2).

Hint argues Short and Richter are both properly considered "party opponents," and pursuant to Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy." *Id.* Under the coconspirator exception, hearsay evidence is admissible only if the proponent proves by a preponderance of the evidence that (1) a conspiracy existed; (2) the statement was made in furtherance of that conspiracy; and (3) the coconspirator and the party opposing admission were members of the conspiracy. *Viazis v. American Association of Orthodontists*, 314 F.3d 758, 767 (5th Cir. 2002), *cert. denied*, 538 U.S. 1033 (2003) (citing *Burton v. United States*, 237 F.3d 490, 503 (5th Cir.2000)). According to Hint, "though most of the cases regarding this exception involve criminal law, the co-conspirator exception applies to

civil cases as well." (Dkt. #150 at pp. 2-3) (quoting *Gray v. Sage Telecom, Inc.*, 3:05-CV-1677-G, 2006 WL 2820075, at *5 (N.D. Tex. Oct. 2, 2006), *aff'd*, 253 Fed. Appx. 402 (5th Cir. 2007) (citing *Viazis*, 314 F.3d at 767)). A joint venture or "conspiracy" need not be for an unlawful purpose to satisfy the hearsay exception. *Datatreasury Corp. v. Wells Fargo & Co.*, No. CIV.A. 2:06-CV-72 DF, 2010 WL 903257, at *2 (E.D. Tex. Mar. 4, 2010) (citations omitted).

Hint asserts all three elements are satisfied. The Report found a genuine fact issue as to whether Twin Oaks and Accresa engaged in a conspiracy. Report at p. 172. According to Hint, the statements relied on by the Report to demonstrate Twin Oaks' inducement were made in furtherance of such conspiracy: (1) Richter describing her call with Twin Oaks where she learned that Twin Oaks was "coming after Hint . . . [and] using Accresa for their back-end;" (2) Short stating that he had "set the expectation with both Twin Oaks and Hint that we are talking to both entities." Report at pp.119–20 (citing Hint Dep. Ex. 283 at ACC0037149; also citing Hint Ex. X at ACC0016098). Noting the Report found that Accresa (the co-conspirator) and Twin Oaks (the party opposing admission) were both members of the conspiracy (Report at p. 172), Hint argues Rule 801(d)(2)(E) excepts the first level of hearsay—Accresa's internal discussions. Regarding the second level of hearsay, Twin Oaks' statement that it was "coming after Hint," Hint argues it is a statement by a party opponent "made by the party in an individual or representative capacity." (Dkt. #150 at p. 3) (citing FED. R. EVID. 801(d)(2)(A)).

The Court is not convinced at this time the Report improperly relied on inadmissible evidence to find that a genuine fact issue exists as to whether Twin Oaks knew about the PPA and induced Accresa to breach the PPA. However, the Court may revisit this Order in greater detail during pretrial or trial, if necessary.

There is evidence that in June 2017, Twin Oaks wanted to "lock [Accresa] down" in a partnership. Report at pp. 119-20 (citing Hint Ex. X at ACC0016098) (stating Hint and Twin Oaks "truly hate each other (beyond the usually competitor hate)"). *Id.* There is evidence from July 2018 that Twin Oaks sought to "convert" Hint's clients by "undercutting them on price." Report at p. 119 (citing Hint. Dep. Ex. 283 at ACC 0037149). In a November 5, 2018 email from Porter to Short, Twin Oaks asked Accresa for additional introductions which Hint alleges as prospects: "Need contacts for RHealth and Catalyst please. We are cooking with gas now. Hint is reeling from the pain, Doctors coming over to us for the corporate platform like crazy, also panic leaving Hint. . . . We have the momentum now. Affiliates signed this week, consultant/brokers next week, 8 or 9 small deals in process." Report at p. 123 (citing Hint Dep. Ex. 292). In an April 19, 2019 email, Twin Oaks indicated that if Accresa decided not to partner with Twin Oaks it would be "handing over the Pure DPC Market to Hint, on a silver platter. . . ." Report at p. 123 (citing Hint Ex. Y at TOSD000002). This evidence, viewed in the light most favorable to Hint, shows a fact issue exists as to whether Twin Oaks and Hint are direct competitors.

The Magistrate Judge held Hint has also produced evidence sufficient to create a genuine issue of material fact regarding whether Accresa has made payments to Twin Oaks pursuant to their agreement. Report at pp. 119-20 (citing Short Corp. Rep. Dep. at 101:4–102:18 ("we are paying Twin Oaks, who would then distribute that on their platform to their physicians"); also citing Morales Dep. at 142:15–143:7 (testifying regarding a July 1, 2019 email wherein she wrote "Twin Oaks was supposed to receive payment, but they are not 'active'" and explaining the reason was Twin Oaks did not have "the bank account information with Accresa"; further testifying Twin Oaks got that information so that as of July 2019 Accresa would have been processing payments for Twin

Oaks to receive), 144:2–146:1 (testifying regarding a July 2019 email from CEO of Twin Oaks Peter Kroon stating "Twin Oaks will be receiving a single deposit from Accresa (doctor fees and TO fee) and Twin Oaks (not Dr. Forrest) will be redistributing that to the Access Network providers with some value added benefits" and verifying Accresa has been making payments to Twin Oaks from August 15, 2019 to present).

Twin Oaks also objects to the Report's finding that Hint has "produced evidence sufficient to create a genuine issue of material fact regarding whether Accresa has made payments to Twin Oaks pursuant to their agreement," arguing this finding is contrary to the record evidence. Twin Oaks asserts it has derived no revenue as a result of Twin Oaks' relationship with Accresa. (Dkt. #146 at p. 4). Specifically, Twin Oaks argues as follows:

> Short's testimony cited in #1 above states 'we are paying,' but not 'we have paid.' Morales' testimony cited in #2 states 'Accresa would have been processing payments,' not 'Accresa did process payments.' Morales' testimony cited in #3 states Twin Oaks 'will be receiving a single deposit from Accresa,' not Twin Oaks 'received a single deposit…'. These statements are nothing more than mere speculation on behalf of Short and Morales, and are not evidence of any payments to Twin Oaks.

*Id.*

As urged by Hint, Short's statement, "we are paying" is in the present tense and is evidence that Accresa paid Twin Oaks pursuant to their integration agreement. The Court agrees with Hint that even if Short's statement is forward-looking, it is still sufficient, combined with the other evidence of record, to create a fact issue as to whether Twin Oaks received payments.

Finally, Twin Oaks objects to the Report's finding that "Hint has presented sufficient evidence to create a genuine issue of material fact that it suffered an injury as a result of the alleged act of tortious interference with an existing contract." (Dkt. #146 at p. 5) (citing Report at p. 124).

Twin Oaks asserts Hint cannot prove any business was actually diverted due to any action by Twin Oaks or that Hint has suffered any damages or loss due to any acts of Twin Oaks. As part of the finding as to Hint's injury, the Report cites to the evidence that in September and October 2018, "Twin Oaks sent out emails promoting its DPC platform, prompting Hint's DPC provider contacts to ask what was going on." *Id.* (citing Report at p. 122 (citing Hint Exs. AB (HINT0218652) and AC (HINT0133745))).

According to Twin Oaks, Accresa had already terminated its contract with Hint and filed suit on July 31, 2018. Asserting the Twin Oaks' emails cited by the Report were not sent until well after the Accresa/Hint PPA was effectively terminated, Twin Oaks argues the emails sent by Twin Oaks in September and October 2018 cannot be evidence of tortious interference by Twin Oaks with the Accresa/Hint PPA as the Accresa/Hint PPA was terminated in July 2018. Twin Oaks further objects that Hint cannot prove any business was actually diverted due to any action by Twin Oaks or that Hint has suffered any damages or loss due to any acts of Twin Oaks.

The Court has carefully considered all of the evidence set forth in detail in the Report and agrees with the Magistrate Judge Hint has presented sufficient evidence to create a genuine issue of material fact that it suffered an injury as a result of the alleged act of tortious interference with an existing contract. Therefore, the Court overrules Twin Oaks' first main objection and denies Twin Oaks' motion for summary judgment regarding Hint's tortious interference with existing contract claim.

### Discussion of second main objection

In its second main objection, Twin Oaks objects to the Report's recommendation that Twin Oaks' motion for summary judgment as to Hint's Lanham Act false advertising claim should be

denied. The Report found Hint had shown record evidence sufficient to establish a fact issue as to each element of Hint's false advertising claim. Report at p. 140. Twin Oaks only objects to Hint's alleged failure to create a fact issue with respect to the damages element of its claim. According to Twin Oaks, there is no evidence to support a finding that Hint suffered any injury. Twin Oaks contends it is entitled to summary judgment on Hint's false advertising claim because Hint has not presented any evidence that any action by Twin Oaks caused any damages. In its response to Twin Oaks' objections, Hint asserts the evidence relied on in the Report shows Hint is likely to be injured as a result of Twin Oaks' false statements. (Dkt. #150 at p. 5).

Again, the Court finds Twin Oaks' argument without merit.  Viewing all of the evidence in the light most favorable to Hint, the Court finds there are genuine issues of material fact regarding injury on the basis Twin Oaks' alleged statements. The Court also agrees with the Magistrate Judge's conclusion that Hint has presented sufficient evidence as to the damages it suffered as a result of the false advertising alleged. Report at p. 140.  The Court is not convinced there are no material issues of fact entitling Twin Oaks to judgment as a matter of law on Hint's Lanham Act false advertising claim under 15 U.S.C. § 1125(a)(1)(B).

### *Discussion of third main objection*

In its third main objection, Twin Oaks objects to the Report's recommendation that Twin Oaks' motion for summary judgment as to Hint's conspiracy claim should be denied. Asserting Hint has not created a genuine issue of material fact as to its tortious interference claim against Twin Oaks, Twin Oaks asserts Hint's conspiracy claim fails. According to Hint's response to Twin Oaks' objections, the Report correctly found a genuine issue of material fact concerning damages related to Twin Oaks' act in furtherance of the conspiracy and the ultimate objective of the conspiracy.

64

The Court agrees with the Magistrate Judge that Hint has created a genuine issue of material fact as to its tortious interference claim against Twin Oaks, and as such, Twin Oaks is not entitled to summary judgment on Hint's claim of conspiracy as a matter of law.  The Court overrules Twin Oaks' third and final objection and denies Twin Oaks' motion for summary judgment as to Hint's conspiracy claim.

## CONCLUSION

The Court, having carefully reviewed the underlying briefing, the Report and Recommendation, the parties' objections to the Report, and the responses to the objections, is of the opinion the findings and conclusions of the Magistrate Judge are correct, and the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Accordingly, it is hereby

**ORDERED** that Accrea Health LLC's Rule 12(b)(6) or 12(c) Motion to Dismiss Hint's Defamation, Business Disparagement, Lanham Act, Tortious Interference, and Conspiracy Claims (Dkt. #94) is **DENIED**. It is further

**ORDERED** that Accrea Health LLC's Sealed Motion for Summary Judgment on Hint's Defamation, Business Disparagement, Lanham Act, Tortious Interference, and Conspiracy Claims (Dkt. #96) is **GRANTED IN PART and DENIED IN PART**. Specifically, the Court grants Accrea's motion for summary judgment regarding Hint's tortious interference with existing contracts counterclaim, but denies the remainder of the motion. It is further

**ORDERED** that Counter-Defendant Twin Oaks Software Development, Inc.'s Motion for Summary Judgment as to Counter-Plaintiff Hint Health, Inc.'s Claims (Dkt. #93) is **GRANTED IN**

**PART and DENIED IN PART**. Specifically, the Court grants Twin Oaks' motion for summary judgment regarding Hint's § 1125(a)(1)(A) Lanham Act claim, but denies the remainder of the motion. Finally, it is

**ORDERED** that Accresa Health LLC's Sealed Motion for Summary Judgment on Hint's Breach of Contract Claim (Dkt. #95) is **GRANTED IN PART and DENIED IN PART**. Specifically, the Court grants Accresa's motion for summary judgment regarding Hint's counterclaim for attorneys' fees under § 38.001 of the Texas Civil Practice and Remedies Code, but denies the remainder of the motion.

**SIGNED this 22nd day of May, 2020.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE