# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ACCRESA HEALTH LLC, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-00536 |
| | § | Judge Mazzant/Magistrate Judge Craven |
| HINT HEALTH INC. | § | |
| | § | |
| Defendant/Counter-Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| TWIN OAKS SOFTWARE DEVELOPMENT | § | |
| INC. | § | |
| Counter-Defendant. | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The final pretrial conference is scheduled before the undersigned on July 9, 2020.  (Dkt. #154). On June 3, 2020, the Magistrate Judge issued a Report and Recommendation regarding proposed findings of fact and recommendations on Hint Health, Inc.'s Motion for Summary Judgment (Dkt. #98). Plaintiff/Counter-Defendant Accresa Health L.L.C. filed objections to the Report and Recommendation, and Defendant/Counter-Plaintiff Hint Health Inc. ("Hint") filed a response to Accresa's objections. The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions.

## BACKGROUND

As set forth in the parties' Joint Final Pre-Trial Order, this is an action for breach of contract,

fraudulent inducement, misappropriation of trade secrets, violation of the Lanham Act, tortious interference, defamation, business disparagement, and civil conspiracy. (Dkt. #127 at p. 3). The dispute at issue in this case focuses on three technology companies, Accresa, Hint, and Counter-Defendant Twin Oaks Software Development, Inc. ("Twin Oaks"), that serve the direct primary care ("DPC") industry.

Accresa alleges Hint fraudulently induced Accresa to enter a preferred partnership agreement ("PPA"), breached the PPA, fraudulently induced Accresa to disclose confidential and proprietary information, and misappropriated Accresa's trade secrets. Accresa asserts the following causes of action against Hint: (1) breach of contract, (2) violation of the Texas Uniform Trade Secret Act (TUTSA), (3) violation of the Federal Defend Trade Secrets Act (DTSA), (4) tortious interference with existing contract, (5) fraudulent inducement, (6) fraud, and (7) violation of Lanham Act (41 U.S.C. § 1125). For the breach of contract, fraudulent inducement, fraud, and misappropriation of trade secret claims, Accresa seeks appropriate injunctive relief, damages, and attorneys' fees.

Hint denies the wrongdoing alleged by Accresa and maintains it performed the PPA in good faith. In its amended counterclaim against Accresa, Hint alleges Accresa breached the PPA by partnering with a direct competitor of Hint, Counter-Defendant Twin Oaks, in express violation of Accresa's agreement with Hint.[1] (Dkt. #34, ¶ 1). Following the Court's May 22, 2020 Order Adopting the March 19, 2020 Report and Recommendation of the United States Magistrate Judge regarding four dispositive motions filed by Accresa and Twin Oaks (Dkt. #151), Hint asserts the remaining claims: (1) breach of contract (against Accresa); (2) tortious interference with prospective

---

[1] On May 23, 2019, the Court granted Hint leave to file a proposed amended counterclaim adding Twin Oaks as a third-party defendant. (Dkt. #40).

business relationships (against Accresa); (3) tortious interference with existing contract (against Twin Oaks); (4) defamation (against Accresa); (5) business disparagement (against Accresa); (6) violations of the Lanham Act (§ 1125(a)(1)(A) false association claim and § 1125(a)(1)(B) false advertising against Accresa) (§ 1125(a)(1)(B) false advertising claim against Twin Oaks); and (7) conspiracy (against Accresa and Twin Oaks). *See* Dkt. #s 34, 151.

## REPORT AND RECOMMENDATION

Five dispositive motions have recently been filed in this case, the last of which the Magistrate Judge considered in her June 3, 2020 114-page Report and Recommendation ("Report"). (Dkt. #152). After setting forth the summary judgment evidence in detail, the Magistrate Judge recommended Hint's motion for summary judgment be granted in part and denied in part. Report at pp. 6-39. Specifically, the Magistrate Judge recommended Hint's motion for summary judgment regarding Accresa's tortious interference with existing contract, Lanham Act, and common law fraud claims be granted, and Hint's motion for summary judgment regarding Accresa's TUTSA, DTSA, and fraudulent inducement claims be denied. *Id*. at pp. 39-113.

In light of Accresa's sole objection considered herein, the relevant part of the Report has to do with Accresa's trade secret misappropriation claims under the TUTSA and DTSA. In its response to Hint's motion for summary judgment regarding Accresa's trade secret misappropriation claims, Accresa argued "use" is not required; rather, it could show that Hint acquired Accresa's trade secrets by means Hint knew or had reason to know were improper (i.e., through misrepresentation and breach of a duty to limit use of Accresa's trade secrets). (Dkt. #107 at pp. 17-19). Alternatively, Accresa asserted it has presented sufficient evidence that Hint used Accresa's trade secrets without Accresa's express or implied consent, noting the broad concept of "use" under trade secret law. *Id*.

at pp. 19-20.

In the Report, the Magistrate Judge assumed Accresa must show "use" and agreed with Accresa that it presented sufficient evidence of such "use." Specifically, the Magistrate Judge explained in a footnote as follows:

> Accresa argues Hint mistakenly relies on *StoneCoat of Tex., L.L.C. v. Procal Stone Design, L.L.C.*, 426 F. Supp. 3d 311 (E.D. Tex. 2019). According to Accresa, *StoneCoat* does not require Accresa to show use for two reasons: (1) *StoneCoat* was about whether Texas courts require trade-secret claimants to show use and has no bearing on how the Court should interpret the federal DTSA; and (2) the proper *Erie* analysis in this case is that a claimant can satisfy TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(A) without showing use. Docket Entry # 107 at p. 17.

> Although District Judge Mazzant noted in *StoneCoat* that some courts have held TUTSA, when properly read, does not contain a 'use' requirement, he also noted this Court had recently held that use is a required element under both statutes. *StoneCoat*, 426 F. Supp. 3d at 341-42 & n.19 (citing *AHS Staffing, LLC v. Quest Staffing Grp., Inc.*, 335 F. Supp. 3d 856 (E.D. Tex. 2018); *SPBS, Inc. v. Mobley*, No. 4:18-CV-00391, 2018 WL 4185522, at *3 (E.D. Tex. Aug. 31, 2018); *Keurig Dr Pepper Inc. v. Chenier*, No. 4:19-CV-505, 2019 WL 3958154, at *3 (E.D. Tex. Aug. 22, 2019)).[2] In *StoneCoat*, the Court assumed 'use' is an essential element of the plaintiffs' trade secret misappropriation claims under the TUTSA and DTSA and noted the Court has held 'any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a "use."' *Id.* (quoting *SPBS,* 2018 WL 4185522, at *7 (other citations omitted)).

> Similarly here, the Court assumes 'use' is an essential element of Accresa's trade secret misappropriation claims under TUTSA and DTSA. The Court notes this is in line with the legal standard provided to and applied by Dr. Bergeron with respect to Accresa's trade secret misappropriation claims. In his supplemental report, Bergeron lists the elements of a trade secret misappropriation claim and includes use. Bergeron Report, ¶ 37.

---

[2] In *Keurig*, the Court listed "use" as a required element, noting "[a]s a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *Keurig*, 2019 WL 3958154, at *5 (quoting *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018) (quoting *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 877 (5th Cir. 2013))). Similarly, in *SPBS, Inc. v. Mobley*, No. 4:18-CV-00391, 2018 WL 4185522 (E.D. Tex. Aug. 31, 2018), the Court stated that under TUTSA, a plaintiff needs to show use without authorization, but not that it was used in interstate commerce. *Id.* at *3 (citing *Wellogix*, 716 F.3d at 874).

4

Report at pp. 79-80, n. 30.

The Magistrate Judge set out the applicable law on "use," noting use is defined broadly as "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *Id.* at p. 80 (quoting *Quintel Tech. Ltd. v. Huawei Techs., Inc*., No. 4:15CV307, 2017 WL 9250312, at *22 (E.D. Tex. Dec. 18, 2017), *report and recommendation adopted sub nom. Quintel Tech., Ltd. v. Huawei Techs. USA, Inc*., No. 4:15CV307, 2018 WL 460227 (E.D. Tex. Jan. 18, 2018) (quoting *GlobeRanger Corp. v. Software AG United States of Am., Inc*., 836 F.3d 477, 497 (5th Cir. 2016))). The Magistrate Judge further noted that improper use of a trade secret includes "relying on the trade secret to assist or accelerate research or development" and "soliciting customers through the use of information that is a trade secret." Report at pp. 80-81 (quoting *Gen. Universal Sys., Inc. v. HAL, Inc*., 500 F.3d 444, 451 (5th Cir. 2007)). The Magistrate Judge concluded there is "sufficient evidence in the record to create a genuine issue of material fact as to whether Hint used Accresa's alleged trade secrets, especially considering the evidence presented by Accresa regarding access to and similarity of design." Report at p. 83.

## ACCRESA'S OBJECTION

Although Accresa agrees with most of the Report, Accresa submits a "narrow objection pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Rule CV-72 to address an erroneous legal conclusion in the Report: the Magistrate Judge's apparent assumption that a trade-secret claimant must show the defendant used the claimant's trade secrets to prevail on a misappropriation claim under the Texas Uniform Trade Secrets Act ('TUTSA') and the Federal Defend Trade Secrets Act ('DTSA')." (Dkt. #157 at p. 2). Based on this Court's discussion in *StoneCoat of Tex., L.L.C. v. Procal Stone Design, L.L.C.*, 426 F. Supp. 3d 311, 340-44 (E.D. Tex.

2019), the Magistrate Judge assumed—but did not decide—that a trade secret claimant must show a defendant used the claimant's trade secrets to prevail on a TUTSA or DTSA claim.  Accresa argues the Magistrate Judge's approach may find support in the Texas common law elements of trade secret misappropriation, which the TUTSA displaced and which should have no bearing on the federal DTSA, but that approach "finds no support in the statutes' text nor in the Supreme Court of Texas's approach to construing statutes." *Id.* Accresa argues the "TUTSA and DTSA provide civil remedies for the misappropriation of trade secrets, and both acts define 'misappropriation' to include 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means' ***OR*** the 'disclosure or use' of trade secrets in certain enumerated circumstances." *Id.* (emphasis in original).

According to Accresa, although many Texas lower court cases and federal cases have required claimants to show use in the TUTSA era, the Court should disregard those cases and, as the Texas Supreme Court of Texas would, give effect to the TUTSA's unambiguous test. *Id*. at pp. 7-9. And to the extent the *StoneCoat* decision requires a TUTSA or DTSA claimant to show that a defendant used the claimant's trade secrets, Accresa urges the Court to revisit *StoneCoat*.  *Id*. at p. 4. Although "[c]orrecting the Magistrate Judge's error" in assuming a "use" requirement would not require the Court to dispose of Hint's motion differently than recommended by the Magistrate Judge, Accresa files its objection "out of an abundance of caution to preserve its argument that Accresa need not show that Hint used Accresa's trade secrets to prevail on its TUTSA or DTSA claims." *Id.* at pp. 2-3. Accresa addresses the *StoneCoat* decision at length, including the cases cited therein, and asserts the Court should find the TUTSA and DTSA do not require a trade secret claimant to show that a defendant used the claimant's trade secrets to prevail on a TUTSA or DTSA claim. *Id.* at pp.

6

6-9. In its conclusion, Accresa states the jury in this case should be instructed in accordance with the unambiguous language of the TUTSA and DTSA. *Id.* at p. 9.

In its response to Accresa's objection, Hint asserts "Accresa's analysis cuts against the great weight of mandatory and persuasive authority and would improperly allow Accresa to recover damages predicated on use based on a theory of liability without use." (Dkt. #166 at p. 1). According to Hint, having survived summary judgment by showing sufficient evidence of use, "the Court should not permit Accresa to abandon its use-based misappropriation claim in favor of a no-use theory of misappropriation for which Accresa cannot recover the damages it seeks. Instead, the Court should adopt the Report in full, and in doing so, reaffirm its previous holdings and require Accresa to prove the element of 'use' at trial." *Id.* at pp. 1-2. Similar to Accresa, Hint also addresses the *StoneCoat* decision, and the cases cited therein, and argues "Accresa has not cited a single case relying solely on Subsection (A)—acquisition by improper means—to substantiate a TUTSA or DTSA claim." *Id.* at pp. 2-4. Hint further asserts "no authority supports Accresa's right to recover the damages it seeks based on misappropriation under Subsection (A) alone." *Id.* at p. 4 (further arguing Accresa's damages models preclude Accresa from recovering on a misappropriation without use theory).[3]

_____

[3] Hint asserts the six discrete forms of misappropriation afford discrete remedies. (Dkt. #166 at p. 5). According to Hint, as explained in the Restatement (Third) of Unfair Competition, in some cases, "an injunction may be the only appropriate remedy, as when the defendant has not yet disclosed or used a trade secret acquired by improper means." *Id.* (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 44, cmt. b (1995)).In cases where the plaintiff does establish use, however, the "relief available to the trade secret owner . . . may be more extensive than that available prior to any use or disclosure of the secret by the defendant." *Id.* (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 40, cmt. b). Hint argues these "more extensive" damages categories are therefore only available for misappropriation by use claims, not misappropriation by acquisition alone. *Id.* (generally citing *Windsor v. Olson*, 3:16-CV-934-L, 2019 WL 2080021, at *20 (N.D. Tex. May 10, 2019) (finding claimant could pursue injunctive relief for trade secret misappropriation by acquisition alone, but could not recover economic damages)).

Hint further notes this "comports with the Court's interpretation of Subsections (A) and (B)" as revealed in *StoneCoat*. (Dkt. #166 at p. 5). According to Hint, in that case, the magistrate judge's holding indicated actual use is required to establish a TUTSA misappropriation claim except in situations where the plaintiff is only seeking injunctive

According to Hint, while Accresa is correct that Subsection (A) does not include the term "use," Accresa cannot avail itself of this theory of misappropriation because its damages models are entirely predicated on use. *Id.* at p. 6. Hint points out Accresa presented four categories of damages for trade secret misappropriation in the Expert Report and Supplemental Expert Report of Chase Perry: (1) Revenue to Hint "from fees earned from its customers that use the network features Hint built using Accresa's protected information;" (2) Cost savings from "Hint's use of Accresa's protected information;" (3) Capital raised because of "Hint's use of Accresa's protected information;" and (4) Accresa's lost profits. *Id.* (citing Sept. 3, 2019 Perry Report (Dkt. #102-58) & Dec. 12, 2019 Supplemental Perry Report (Dkt. #102-61)). Hint asserts Perry's reports do not attempt to tie Accresa's lost profits in any way to a theory of misappropriation by acquisition alone.[4] (Dkt. #166 at p. 6, n. 2). Hint concludes as follows:

---

relief. *Id.* (citing *StoneCoat*, 426 F. Supp.3d at 340, n. 18). In the Court's Order Adopting the Report and Recommendation of the Magistrate Judge, the Court noted the plaintiffs had argued before the magistrate judge that the TUTSA only requires that the defendant be in possession of proprietary information and in a position to use it. *StoneCoat*, 426 F. Supp.3d at 340, n. 18. The Court then stated as follows:

> The Magistrate Judge was not persuaded by that argument, and she noted [ *Fox v. Tropical Whs., Inc.*, 121 S.W.3d 853, 860 (Tex. App. – Fort Worth 2003, no pet.)] relied upon by Plaintiffs concerned entry of an injunction. Dkt. #241 at p. 151 (also citing *Hughes v. Age Indus., Ltd.*, 2017 WL 943423, at *5 (Tex. App. – San Antonio Mar. 8, 2017, no pet.)) ('Because the very purpose of an injunction is to prevent disclosure of trade secrets pending trial, an applicant is not required to show the defendant is actually using the information. . . . Instead, the applicant must show the defendant possesses the trade secrets and is in a position to use them.').

> The Magistrate Judge stated a federal court in the Fifth Circuit recently explained that 'Texas law provides that both actual and threatened misappropriation may be enjoined;' thus, 'the weight of case law supports the entry of an injunction upon a showing that a defendant probably, rather than actually, disclosed trade secrets.' Dkt. #241 at p. 152 (quoting *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58-RP, 2019 WL 369152, at *3 (W.D. Tex. Jan. 30, 2019) (*citing Cardoni v. Prosperity Bank*, 805 F.3d 573, 590 (5th Cir. 2015) (holding that a district court correctly 'made an individualized assessment of whether disclosure had occurred or was likely to occur in this case'))).

*Id.*

[4] Hint further notes the Magistrate Judge pointed out Accresa's expert reports on trade secret misappropriation assumed "use" is an essential element of Accresa's claims. (Dkt. #166 at p. 7, n. 3) (citing Report at p. 80, n. 30).

Accresa therefore cannot abandon its misappropriation by use theory while also submitting its damages theories to the jury. The jury must find 'use' in order to award Accresa's alleged damages.

*Id*. at p. 7.

## APPLICABLE LAW

### *Defend Trade Secrets Act*

To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. *Clean Energy v. Trillium Transportation Fuels L.L.C.*, No. CV H-19-244, 2019 WL 1522521, at *3 (S.D. Tex. Mar. 22, 2019), *report and recommendation adopted*, No. CIVILACTIONH19244, 2019 WL 1515123 (S.D. Tex. Apr. 8, 2019) (citing 18 U.S.C. § 1836; also citing *Blue Star Press, L.L.C. v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *2 (W.D. Tex. Mar. 6, 2018)). Under the DTSA, a "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information," that the owner takes reasonable measures to keep confidential and that derive independent economic value from not being generally known by or readily accessible to the public. *KaZee, Inc. v. Callender*, No. 4:19-CV-31-SDJ, 2020 WL 994832, at *8 (E.D. Tex. Mar. 2, 2020) (citing 18 U.S.C. § 1839(3)). Under the DTSA, "misappropriation" means:

(A) acquisition of a trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who—

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—

(I) derived from or through a person who had used improper means to acquire the trade secret;

(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or

(iii) before a material change of position of the person, knew or had reason to know that—

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake.

*McAfee, L.L.C. v. Kinney*, No. 4:19-CV-463, 2019 WL 4101199, at *5 (E.D. Tex. Aug. 29, 2019) (quoting 18 U.S.C. § 1839(5)).

Thus, the DTSA's definition of "misappropriation" includes acquisition or use of trade secrets with the knowledge that they were acquired by improper means. *See KaZee,* 2020 WL 994832, at *8. "Improper means" "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and does not include reverse engineering, independent derivation, or any other lawful means of acquisition." *McAfee*, 2019 WL 4101199, at *5 (quoting 18 U.S.C. § 1839(6)). Misappropriation and improper means have the same definitions under the federal and Texas acts. *Id*. at *5, n. 3 (*comparing* 18 U.S.C. § 1839(5) *with* TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(3)).

***Texas Uniform Trade Secrets Act***

In 2013, in an effort to bring Texas law in line with the "overwhelming majority of the United States" and "provid[e] a simple legislative framework for litigating trade secret issues in

10

Texas," the Texas Legislature enacted a modified version of the Uniform Trade Secrets Act. *StoneCoat of Texas, L.L.C. v. ProCal Stone Design, L.L.C.*, 426 F. Supp. 3d 311, 332 (E.D. Tex. 2019) (quoting *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2017 WL 2730739, at *11 (S.D. Tex. June 26, 2017) (quoting Texas Bill Analysis, S.B. 953, 2013 at 1)). The enrolled bill, known as the TUTSA, became effective on September 1, 2013, and displaces both common-law misappropriation-of-trade-secret and TTLA theft-of-trade-secret claims. *StoneCoat*, 426 F. Supp. 3d at 332 (citing *BHL*, 2017 WL 2730739, at *11 (citing *In re Mandel*, 578 Fed. Appx. 376, 384 n.8 (5th Cir. 2014) (per curiam) (unpublished); also citing *Educ. Mgmt. Servs., L.L.C. v. Tracey*, 102 F. Supp. 3d 906, 915 (W.D. Tex. 2015))).

> TUTSA defines "misappropriation," in pertinent part, as follows:
>
> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
>>
>>> (a) derived from or through a person who used improper means to acquire the trade secret;
>>>
>>> (b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or
>>>
>>> (c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret. . . .

*Keurig Dr Pepper Inc. v. Chenier*, No. 4:19-CV-505, 2019 WL 3958154, at *5 (E.D. Tex. Aug. 22,

2019) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(3)(A)(B)).

After TUTSA's enactment in 2013, the Trade Secrets Committee and the Committee on Pattern Jury Charges spent two years considering and discussing the draft pattern charge for claims under TUTSA. III. TEXAS PATTERN JURY CHARGE ON TRADE SECRETS, 2019 TXCLE-ABL 7-III, 2019 WL 6324388. The combined work of these two committees culminated in the pattern jury charge ("PJC") for trade secret misappropriation which includes questions and instructions on the existence of a trade secret (PJC 111.1), questions and instruction on trade secret misappropriation (PJC 111.2), a question on trade secret misappropriation damages (PJC 115.54), and sample instructions on actual damages on trade secret misappropriation cases (PJC 115.55). *Id.* PJC 111.2 comment states Section 134A.002(3) of the TUTSA provides for six alternative improper methods of acquisition, use, or disclosure of trade secrets, but "only the method(s) supported by the pleadings and evidence should be submitted." PJC 111.2 comment.

This is illustrated by a Texas appellate court opinion released last month. In *Title Source, Inc. v. HouseCanary, Inc.*, No. 04-19-00044-CV, 2020 WL 2858866 (Tex. App. – San Antonio June 3, 2020), the appellant Title Source, Inc. ("TSI") sued appellee HouseCanary, Inc. f/k/a Canary Analytics, Inc. ("HouseCanary") for breach of contract and fraud. *Id.* at *1. HouseCanary filed counterclaims for breach of contract, fraud, misappropriation of trade secrets under the TUTSA, unjust enrichment, quantum meruit, and intentional interference with an existing contract. *Id.* The jury rejected TSI's claims, found in favor of HouseCanary on its breach of contract, fraud, and misappropriation claims, and awarded HouseCanary both compensatory and punitive damages. HouseCanary elected to recover on its fraud and misappropriation claims, and the trial court signed a final judgment that ordered TSI to pay compensatory damages, punitive damages, prejudgment

12

interest, and attorney's fees. *Id.* On appeal, the court affirmed the trial court's judgment in part, reversed it in part, and remanded the cause for a new trial on HouseCanary's misappropriation of trade secret and fraud claims.  *Id.*

> Notably, the jury was asked to determine whether TSI:
>
> 1) acquired the trade secrets and knew or had reason to know that the trade secrets were acquired by improper means; or
>
> 2) disclosed or used the trade secrets without HouseCanary's express or implied consent, and that TSI used improper means to acquire knowledge of the trade secrets; or
>
> 3) disclosed or used the trade secrets without HouseCanary's express or implied consent, and that TSI, at the time of the disclosure or use, knew or had reason to know its knowledge of the trade secrets were acquired under circumstances giving rise to a duty to maintain secrecy or limit their use.

*Id.* at *7 (quoting TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(A), (B)(i), (B)(ii)(b)). Thus, the jury was instructed that it could find misappropriation based on either a "use" theory or an "acquisition by improper means" theory. *Id.* at *9 (quoting TEX. CIV. PRAC. & REM. CODE §§ 134A.002(3)(A), (B)(i), (B)(ii)(b)). The appellate court noted neither the statute nor the jury charge defined "use," but both defined "improper means" as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 134A.002(2)).

TSI objected to the question on the basis that it "obtained the alleged trade secrets properly under the agreements between the parties" and "there is no evidence of . . . improper means." *Title Source*, 2020 WL 2858866, at *9. HouseCanary asserted the evidence showed TSI relied on HouseCanary's trade secrets to assist or accelerate its own research and development, and this

13

evidence supports a misappropriation finding under a "use" theory. *Id.* at *10 (citing TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(ii)(b); also citing *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 279 (5th Cir. 2012); also citing *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538–39 (5th Cir. 1974)). HouseCanary also argued "there is abundant evidence" that TSI acquired the trade secrets through misrepresentation and that this evidence supported a misappropriation finding under an "improper means" theory. *Id.*

On appeal, the court held this charge included "multiple liability theories, several of which [were] not supported by legally sufficient evidence."[5] *Title Source*, 2020 WL 2858866, at *11 (quoting *Laredo Med. Grp. Corp. v. Mireles*, 155 S.W.3d 417, 427 (Tex. App.—San Antonio 2004, pet. denied)). The court had previously held that "when only one subpart [of a liability question] is supported by legally sufficient evidence" the trial court's judgment must be remanded for a new trial. *Title Source*, 2020 WL 2858866, at *11 (quoting *Mireles*, 155 S.W.3d at 426). Thus, the court in *Title Source* reversed the trial court's judgment on HouseCanary's TUTSA claim and remanded that claim for a new trial.

---

[5] Specifically, the court noted the jury was instructed that "improper means" includes bribery, espionage, and "breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret." *Title Source*, 2020 WL 2858866, at *10. Although this instruction tracks TUTSA's definition of "improper means" and was therefore a correct statement of law, because HouseCanary conceded at oral argument that there is no evidence TSI acquired the trade secrets through bribery, and there was no evidence that TSI acquired the trade secrets through espionage, the court held those theories were not supported by the evidence. Thus, they should have been omitted from the "improper means" definition that was submitted to the jury. *Id.*

Similarly, the "breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret" instruction should have been omitted from the charge. *Id.* According to the court, under the plain language of both TUTSA and the court's charge, "TSI needed to acquire the trade secrets *as a result of* the alleged breaches to support a misappropriation finding." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(A) ("'Misappropriation' means: (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret *was acquired* by improper means[.]") (emphasis added in *Title Source*). The court explained a post-acquisition breach of a confidentiality or non-disclosure agreement—the only breaches HouseCanary presented evidence of in that case—"is irrelevant to the method by which [TSI] obtained access to the trade secrets in the first instance" and thus cannot support an improper means finding as a matter of law. *Title Source*, 2020 WL 2858866, at *10 (quoting *Educ. Mgmt. Servs., L.L.C. v. Tracey*, 102 F. Supp. 3d 906, 914 (W.D. Tex. 2015); also citing *Educ. Mgmt. Servs., L.L.C. v. Cadero*, No. SA-14-CA-587, 2014 WL 12586781, at *2 (W.D. Tex. Nov. 18, 2014)).

*Relevant case law on "use"*

In *StoneCoat of Texas, L.L.C. v. ProCal Stone Design, L.L.C.*, 426 F. Supp. 3d 311 (E.D. Tex. 2019), the plaintiffs objected to the magistrate judge's recommendation that ProCal's motion for summary judgment regarding StoneCoat's trade secret misappropriation and related claims be granted. *Id.* at 323, 326. In their objections, StoneCoat argued, without citing specific authority in their objections, neither the DTSA nor the TUTSA requires use of the trade secret in order to prove misappropriation. *Id.* at 326, 340. According to StoneCoat, all that is required is acquisition of a trade secret by improper means. *Id.* at 326. However, relying on additional evidence that was not before the magistrate judge, StoneCoat alternatively asserted ProCal's use of the French formula without StoneCoat GP's consent constituted misappropriation. *Id.* at 326, 328-332.

After addressing whether the TUTSA preempted any of StoneCoat's other state law claims, *id.* at 333-339, the Court considered StoneCoat's objection that the TUTSA and the DTSA do not require use of the trade secret to be actionable. *Id.* at 340. The Court discussed at length recent opinions from federal district courts involving the TUTSA and DTSA which list "use" as a required element for both trade secret misappropriation claims. *Id.* at 340-41 (citing *Marek Brother Sys., Inc. v. Enriquez*, No. 3:19-CV-01082, 2019 WL 3322162 (N.D. Tex. July 24, 2019); also citing *Blue Star Press, L.L.C. v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *2 (W.D. Tex. Mar. 6, 2018); also citing  *M-I L.L.C. v. Q'Max Sols., Inc*., No. CV H-18-1099, 2019 WL 3565104 (S.D. Tex. Aug. 6, 2019); also citing *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018)).[6] The Court also noted  a federal court in the Northern District of Texas has held TUTSA,

---

[6] In its objection, Accresa asserts not one of these cases that required a claimant to show that a defendant used the claimant's trade secrets analyzed the text of the TUTSA or DTSA. (Dkt. #157 at p. 7). According to Accresa, "ignoring *Stover*'s analysis and the statutes' text, the cited cases applied the Texas common-law elements of trade-secret

when properly read, does not contain a "use" requirement. *StoneCoat*, 426 F. Supp. 3d at 342 (citing *Sears Authorized Hometown Stores, L.L.C. v. Y&O WF, L.L.C.*, No. 7:18-CV-00083-O-BP, 2018 WL 6608354, at *3 (N.D. Tex. Nov. 29, 2018), *report and recommendation adopted*, No. 7:18-CV-00083-O-BP, 2018 WL 6603813 (N.D. Tex. Dec. 17, 2018)).

In *Sears*, the defendant sought dismissal of Sears' claim for misappropriation of trade secrets under Federal Rule of Civil Procedure 12(b)(6), arguing that "use" of a trade secret is a required element of a misappropriation claim under the TUTSA. *Sears*, 2018 WL 6608354, at *2. Sears argued there was no such requirement, but even if there were, Sears argued it had properly alleged the defendant used its trade secrets by refusing to return them to Sears. *Id.* The court first distinguished the court's decision in *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013), wherein the Fifth Circuit listed "use" as an element of a misappropriation of trade secret claim in Texas. *Id.* The court noted the claims asserted in *Wellogix* were a common law claim for misappropriation and a statutory claim for theft of trade secrets under the TTLA, not a claim under TUTSA as alleged by Sears. *Id.* The court further noted the TUTSA, which became effective on September 1, 2013, was not in effect when the Fifth Circuit decided *Wellogix* on May 15, 2013. *Id.*

The defendant also relied on other district court cases, but the court stated those cases repeated "the *Wellogix* formulation of a misappropriation of trade secret claim without closely examining TUTSA's text." *Id.* at *3 (citations omitted). According to the court, the analysis of TUTSA that most closely follows the text of the statute appeared in *His Company, Inc. v. Stover*, 202 F. Supp. 3d 685 (S.D. Tex. 2016), *vacated as moot*, No. 4:15-CV-00842, 2016 WL 6134939 (S.D.

---

misappropriation even though the TUTSA displaced those elements or did not discuss the TUTSA or DTSA at all." *Id.*

Tex. Sep. 8, 2016).[7] In *Stover*, Judge Harmon considered whether TUTSA requires "improper means" of acquisition for liability. S*toneCoat*, 426 F. Supp. 3d at 342 (citing *Stover*, 202 F.Supp.3d at 691-92). Judge Harmon listed the elements of a statutory misappropriation claim under TUTSA and then stated, in contrast, there were three elements of a trade secret misappropriation claim that "were, and continue to be, frequently recited and interpreted with a subtle, but important variation that influences liability."[8] S*toneCoat*, 426 F. Supp. 3d at 342 (citing *Stover*, 202 F.Supp.3d at 692). She noted many district courts in Texas continue to "parrot the common law elements" of misappropriation "without regard to the text or intent of" TUTSA.  S*toneCoat*, 426 F. Supp. 3d at 342-43 (citing *Stover*, 202 F.Supp.3d at 693).

In evaluating the statute, she considered TUTSA's text "holistically, accounting for the 'full text, language as well as punctuation, structure, and subject matter. " S*toneCoat*, 426 F. Supp. 3d at 343 (quoting *Stover*, 202 F.Supp.3d at 693-94) (quoting *Elgin Nursing & Rehab. Ctr. v. U.S. Dept. of Health & Human Servs*., 718 F.3d 488, 494 (5th Cir. 2013) (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc*., 508 U.S. 439, 455, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993)))). Noting the three disjunctive "ors" and five semi-colons employed in the definition of misappropriation, Judge Harmon found the construction indicated there are "multiple, equal paths

---

[7] The *Stover* court vacated its own opinion as moot upon discovery that the plaintiff had filed a Rule 41(a)(1)(A)(i) Notice of Dismissal prior to its issuance of its order on the defendant's motion to dismiss. *Nat. Dynamics, L.L.C. v. Calm Nat. Ltd.*, No. A-14-CV-1060-LY-ML, 2017 WL 11048957, at *8 (W.D. Tex. May 19, 2017), *report and recommendation adopted in part, rejected in part*, No. A-14-CV-01060-LY, 2017 WL 11049420 (W.D. Tex. June 9, 2017) (citing *HIS Co., Inc. v. Stover*, No. 4:15-CV-00842, 2016 WL 6134939, at *1 (S.D. Tex. Sept. 8, 2016)). According to the court in *Nat. Dynamics*, the *Stover* court's background on misappropriation claims and interpretation of TUTSA's statutory provisions remains thorough and persuasive. *Nat. Dynamics*, 2017 WL 11048957, at *8.

[8] "One variation indicates that a defendant must have acquired the trade secret in a particular manner, i.e., there is only one path to liability focused on whether the means used to acquire the trade secret were improper." *StoneCoat*, 426 F. Supp. 3d at 342, n. 21 (quoting *Stover*, 202 F. Supp. 3d at 692). "In other cases, however, the recitation of the elements suggests that there are two paths to liability, either by acquiring the trade secret through improper means *or* using or disclosing a trade secret in breach of a confidential relationship." *Id.* (emphasis in original).

to liability under the statute." S*toneCoat*, 426 F. Supp. 3d at 343 (quoting *Stover*, 202 F.Supp.3d at

693). She concluded there are "actually six alternative paths to liability under TUTSA," at least one

of which does not require that the trade secret be acquired by improper means.[9] *StoneCoat*, 426 F.

Supp. 3d at 343 (quoting *Stover*, 202 F.Supp.3d at 694-95).

In addition to the above federal cases, the Court in *StoneCoat* considered Texas case law.[10]

The Court first noted a Texas appellate court had outlined the same "six discrete forms" of

"misappropriation" set forth by Judge Harmon in *Stover:*

> (A) acquisition of a trade secret of another by a person who knows or has reason to
> know that the trade secret was acquired by improper means [Form 1]; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent
> by a person who:
>
>> (i) used improper means to acquire knowledge of the trade secret [Form 2];
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the
>> person's knowledge of the trade secret was:
>>
>> (a) derived from or through a person who had utilized improper means to
>> acquire it [Form 3];
>>
>> (b) acquired under circumstances giving rise to a duty to maintain its

---

[9] The court in *Sears* agreed with the court's interpretation of TUTSA explained in *Stover*. *StoneCoat*, 426 F. Supp. 3d at 343, n. 22 (citing *Sears*, 2018 WL 6608354, at *4). According to the court, under "this reading of the statute, Sears was not obligated to allege that Y & O used its trade secrets to state a valid claim for misappropriation." *Id.* Rather, Sears could properly state a claim under TUTSA by alleging Y & O acquired its trade secrets by improper means, which it had done. *Id.* The court further found that even if TUTSA requires "use" as a necessary element, Sears had properly pleaded that Y & O used its trade secrets by "taking control of them and holding them hostage." *Id.* ("Although the parties have not cited a case on the exact point that refusing to return trade secrets may qualify as 'use,' and the Court's research has not revealed such a case, it seems reasonable that refusal to return trade secrets in an effort to gain leverage over another party, such as what Sears alleged Y & O did in this case, suffices as commercial use of trade secrets to the potential disadvantage of Sears.").

[10] Because the Texas Supreme Court has not decided this issue, the Court must make an "*Erie* guess" as to how it would do so. *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 157 (5th Cir. 2018) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)). The Court looks first to Texas's primary sources of law—here, TUTSA—and then to the decisions of state intermediate courts. *Id.*

secrecy or limit its use [Form 4]; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use [Form 5]; or

(iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake [Form 6].

*StoneCoat*, 426 F. Supp. 3d at 343 (quoting *Super Starr International, L.L.C. v. Fresh Tex Produce, L.L.C.*, 531 S.W.3d 829, 844 (Tex. App. – Corpus Christi-Edinburg 2017) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(3))).[11]

However, the Court also noted there were Texas appellate courts that had recently listed "use" of the alleged trade secret as critical to a TUTSA claim.[12] *StoneCoat*, 426 F. Supp. 3d at 343–44 (citing *Goldberg v. EMR (USA Holdings) Inc*., No. 05-18-00261-CV, 2019 WL 3955771 (Tex. App. – Dallas Aug. 22, 2019), *opinion withdrawn and superseded on reh'g*, 594 S.W.3d 818 (Tex. App. Jan. 23, 2020); also citing *Neurodiagnostic Consultants, L.L.C. d/b/a Synaptic Res. of Austin, L.L.C., a Texas Ltd. Liab. Co. v. Melody Nallia, an individual, et al.*, No. 03-18-00609-CV,

---

[11] The Court notes a recent overview of an Advanced Intellectual Property Law course on the TUTSA states "TUTSA's definition of misappropriation is complicated, and it is frequently misinterpreted by both courts and litigants." THE TEXAS UNIFORM TRADE SECRETS ACT, 2020A TXCLE-AIP 3-I, 2020 WL 1458481 (citing *His Co., Inc. v. Stover*, 202 F. Supp. 3d 685, 693 (S.D. Tex.) (collecting cases), *vacated as moot*, No. 4:15-CV-00842, 2016 WL 6134939 (S.D. Tex. Sept. 8, 2016)). The overview describes in detail the six alternative paths to liability under TUTSA.

[12] The Court notes its current research has located a recent appeal of a take-nothing judgment after trial on the merits in a case involving breach of contract and TUTSA counterclaims, wherein a Texas appellate court stated that in a merits trial (as opposed to a pretrial request for temporary injunctive relief) "[a]ctual and unauthorized use of trade secrets must be proved to prevail on a misappropriation claim." *Malone v. PLH Grp., Inc*., No. 01-19-00016-CV, 2020 WL 1680058, at *5 (Tex. App. – Houston [1st Dist.] Apr. 7, 2020 , no pet. h.) (quoting *Eagle Oil & Gas Co. v. Shale Expl*., L.L.C., 549 S.W.3d 256, 273 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd)). According to the court in *Malone*, in this context, "use" means "commercial use for the purpose of profit," and includes "use likely to injure the secret's owner, enrich the defendant, or aid the defendant in its own research and development." *Id*. (citing *Gen. Universal Sys., Inc. v. HAL, Inc*., 500 F.3d 444, 450–51 (5th Cir. 2007) ("[A]ny exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use' . . . [including] relying on the trade secret to assist or accelerate research or development. . . .")).

2019 WL 4231232, at *8 (Tex. App. – Austin Sept. 6, 2019); also citing *Morrison v. Profanchik*, No. 05-17-01281-CV, 2019 WL 3798182, at *5 (Tex. App. – Dallas Aug. 13, 2019), *supplemented*, No. 05-17-01281-CV, 2019 WL 5112268 (Tex. App. – Dallas Oct. 10, 2019) (citing *Universal Plant Servs., Inc. v. Dresser-Rand Grp., Inc.*, 571 S.W.3d 346, 360 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("To establish misappropriation of trade secrets under Texas law, a plaintiff must show the existence of a trade secret that the defendant acquired through a breach of a confidential relationship or through other improper *means and that the secret was used without authorization*, resulting in damages to the plaintiff.")) (emphasis added in *StoneCoat*).

Considering the Texas appellate court cases which continued to require use of an alleged trade secret in trade secret misappropriation claims asserted under TUTSA, and further considering the many federal courts interpreting TUTSA (and DTSA) which also continued to list use as an element, the Court was not convinced the magistrate judge erred in looking at whether the evidence of record was sufficient to establish use. *StoneCoat*, 426 F. Supp. 3d at 344. Although the Court noted there was some case law in support of StoneCoat's argument, the Court concluded the "current state of the law" on the issue as set forth by the Fifth Circuit Court of Appeals, numerous federal district courts, and some Texas appellate courts indicated the magistrate judge properly considered whether StoneCoat submitted sufficient evidence of ProCal's use of the formula at issue in that case. *Id.* at 340. However, rather than definitively decide the issue, the Court assumed "use" was an essential element of StoneCoat's trade secret misappropriation claims. *Id.* at 344. With that assumption, the Court found StoneCoat's new evidence (submitted for the first time in its objections) was sufficient to create a genuine issue of material fact that Profanchik and ProCal Stone Design used the formula. *Id.* at 344-45 ("Although it would have been unreasonable for a jury to infer use

of the French formula on the record before the Magistrate Judge, the record as supplemented with the new evidence incorporated into the objections is sufficient to create a genuine issue of material fact as to Profanchik's and ProCal Stone Design's (but not the remaining ProCal entities' or Kinser's) use of the French formula.").

### *DE NOVO* REVIEW

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a *de novo* review of those findings or recommendations to which the party specifically objects.[13] *Williams v. Lambright*, No. 4:18-CV-219, 2019 WL 1275338, at *2 (E.D. Tex. Mar. 20, 2019) (citing 28 U.S.C. § 636(b)(1)(C); also citing FED. R. CIV. P. 72(b)(2)-(3)). With respect to the June 3, 2020 Report, Hint did not file any objections, and Accresa raises only a single "narrow objection" to the Report. Accresa does not object to any of the Magistrate Judge's substantive findings or conclusions. Rather, Accresa's sole objection is to the Magistrate Judge's approach, as previously used by the Court in *StoneCoat*, to assume a "use" theory.

Even though the Magistrate Judge recommended Accresa's trade secret misappropriation claims survive summary judgment, Accresa takes issue with the Magistrate Judge's assumption that a trade secret claimant must show that a defendant used the claimant's trade secrets to prevail on a TUTSA or DTSA claim. Accresa argues this approach finds no support in the statutes' text nor in the Supreme Court of Texas's approach to construing statutes. Even though it will not change the

---

[13] The Magistrate Judge advised the parties of this requirement and also that failure to file specific, written objections will bar a party from appealing the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the Court, except upon grounds of plain error. Report at pp. 113-14. As further noted by the Magistrate Judge, in order to be specific, "an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found." *Id.* at p. 113.

result, Accresa asserts the Court should affirmatively find the TUTSA and DTSA do not require a trade secret claimant to show that a defendant used the claimant's trade secrets to prevail on a TUTSA or DTSA claim.

Accresa acknowledges its narrow objection, if meritorious, would not require the Court to dispose of Hint's motion differently than the Magistrate Judge recommends in the Report. (Dkt. # 157 at pp. 2-3). Even though Accresa has no objection to the ultimate recommendations, Accresa files its "objection out of an abundance of caution to preserve its argument that Accresa need not show that Hint used Accresa's trade secrets to prevail on its TUTSA or DTSA claims." *Id.* at p. 3; see also id. at p. 9 ("Accresa submits that the jury in this case should be instructed in accordance with the unambiguous language of the TUTSA and DTSA").

The Magistrate Judge did not conclude that "use" is an essential element of Accresa's trade secret misappropriation claims under the TUTSA and DTSA. Instead, the Magistrate Judge followed the Court's example of assuming use is required and found sufficient evidence in the record to create a genuine issue of material fact regarding Hint's use of Accresa's alleged trade secrets. Report at pp. 79-80, n. 30 (citing *StoneCoat of Texas, L.L.C. v. ProCal Stone Design, L.L.C.*, 426 F. Supp. 3d 311 (E.D. Tex. 2019)). The Court does not find the Magistrate Judge erred in making this assumption or in her ultimate conclusion, based on her review of the extensive evidence in the record, that there is sufficient evidence of such use (if required).[14]

Nor does the Court find this approach, as used by the Magistrate Judge and by the Court in

---

[14] As pointed out by the Magistrate Judge and also by Hint in its response to Accresa's objection, the assumption is in line with the legal standard provided to and applied by Dr. Bergeron with respect to Accresa's trade secret misappropriation claims. Report at p. 80, n. 30. In his supplemental report, Bergeron lists the elements of a trade secret misappropriation claim and includes use. *Id.* (citing Bergeron Report, ¶ 37).

*StoneCoat*, would preclude a jury instruction in accordance with the unambiguous language of the TUTSA and DTSA as suggested by Accresa. The Court did not state in *StoneCoat*, nor did the Magistrate Judge state in her Report, that improper disclosure could not constitute misappropriation if supported by the pleadings and evidence in this case.[15] The Court recognizes trade secret misappropriation may be based on either a "use" theory or an "acquisition by improper means" theory, and alternative theories may be submitted to the jury if supported by the pleadings and evidence. *See Title Source*, 2020 WL 2858866, at *9; however, the issue of which theories should be submitted to the jury in this case is not currently before the Court.

## CONCLUSION

The Court, having reviewed the underlying briefing, the Report and Recommendation, Accresa's narrow objection to the Report, and Hint's response to the objection, is of the opinion the findings and conclusions of the Magistrate Judge are correct, and Accresa's narrow objection is without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Accordingly, it is hereby

**ORDERED** that Hint Health, Inc.'s Motion for Summary Judgment (Dkt. #98) is **GRANTED IN PART and DENIED IN PART**. It is further

**ORDERED** that Hint's motion for summary judgment regarding Accresa's tortious

---

[15] Under TUTSA and DTSA, "misappropriation" includes, in part, "disclosure or use of a trade secret of another without express or implied consent" by a person who, "at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret." *Windsor v. Olson*, No. 3:16-CV-934-L, 2019 WL 2080021, at *19 (N.D. Tex. May 10, 2019) (quoting TEX. CIV. PRAC. & REM. CODE § 134A.002(3)(B)(ii)(b); also citing 18 U.S.C. § 1839(5)(B)(ii)(II)).

interference with existing contract, Lanham Act, and common law fraud claims is granted, and Hint's motion for summary judgment regarding Accresa's TUTSA, DTSA, and fraudulent inducement claims is denied. It is further

**ORDERED** that Accresa's tortious interference with existing contract, Lanham Act, and common law fraud claims are **DISMISSED WITH PREJUDICE**.

**SIGNED this 6th day of July, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE